David M. Bennett
Texas Bar No. 02139600
Richard Roper
Texas Bar No. 17233700
Katharine Battaia Clark
Texas Bar No. 24046712
Jennifer R. Ecklund
Texas Bar No. 24045626
THOMPSON & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
214.969.1700 (telephone)
214.969.1751 (facsimile)
david.bennett@tklaw.com
richard.roper@tklaw.com
katharine.clark@tklaw.com
jennifer.ecklund@tklaw.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 15-40289-rfn11** |
| **LIFE PARTNERS HOLDINGS, INC.,** | § | |
| *et. al.* | § | **JOINTLY ADMINISTERED** |
| | § | **(Chapter 11)** |
| **Debtors.** | § | |

| | | |
|---|---|---|
| **H. THOMAS MORAN II, as Trustee for Life Partners Holdings, Inc., LIFE PARTNERS, INC., and LPI FINANCIAL SERVICES, INC.** | § | |
| | § | **ADV. PRO. NO. _____** |
| **VS.** | § | |
| **72 VEST LEVEL THREE LLC; A BETTER FINANCIAL PLAN, LLC; A. NICK COPPOLO; ABIO FINANCIAL GROUP, INC.; ADVANCE LEVEL SOLUTIONS, LLC; AFRAIN CAVAZOS; ALCHEMY ADVISORY GROUP, INC.; ALL ABOUT SENIORS; ALLIANCE AFFILIATED EQUITIES CORPORATION; ALLIANCE OF PROFESSIONALS FOR BUSINESS; ALVIN L. LEE; AMZ FINANCIAL INSURANCE SERVICES; ANDY LAWSON; ASSURED RETIREMENT, LLC; BAILEY FINANCIAL; BAY** | § | |

**WINE, INC.; BRENT HUSTED;** §
**BUSINESS LEGACY, INC.; CARRIE** §
**BITROS; CARY SPECTOR; CHARLES** §
**CLARKSON; CHARLES WELDE;** §
**CHARTER INSURANCE BROKERAGE,** §
**INC.; CHARTWELL ASSET** §
**MANAGEMENT, INC.; CHIDESTER** §
**INVESTMENT, LLC; CHRISTINE** §
**SMITH; CLARK FINANCIAL GROUP,** §
**INC.; CLEAR SUM, LLC; CLINT** §
**PERRIN DBA VISIONARY CAPITAL** §
**PLANNING; CLYDE JONES;** §
**COMPREHENSIVE FINANCIAL** §
**SERVICES, LLC; CPF HEALTH** §
**BENEFITS INSURANCE AGENCY,** §
**INC.; CRAIG TODD; CROSSROADS** §
**AGENCY; D.R. SAUR FINANCIAL,** §
**INC.; DARRELL MCCAULEY; DAVID** §
**BARR; DAVID EILAND; DAVID P.** §
**LEEMAN; DAVID VALENCIA;** §
**POSITIVE RATE INVESTMENTS, LLC;** §
**DEAN VAGNOZZI; DEAN VAGNOZZI** §
**DBA** §
**ABETTERFINANCIALPLAN.COM,** §
**LLC; DECKCO, INC.; DENNIS** §
**LAGOW; DIAMOND SAFE** §
**FINANCIAL, LLC; DON BALLEW;** §
**DON WILSON; DONALD L.** §
**ASHBERRY; DONALD RASMUSSEN;** §
**DOUGLAS CASSEL; EAGLE ONE** §
**INVESTMENTS, LLC FBO INFINITY** §
**ASSET MANAGEMENT, LLC; EARL F.** §
**GILLHAM DBA FLATLANDER** §
**FINANCIAL INC.; EDI INSURANCE** §
**AGENCY; EDUCATED INVESTMENT** §
**GROUP; ELIZABETH WHITLOCK;** §
**ELIZABETH WHITLOCK** §
**INVESTMENTS, LLC; ETHAN BONAR;** §
**FEI HAVENOR; FILPANSICK** §
**HOLDINGS, LLC; FIRST UP, INC.;** §
**FLATLANDER FINANCIAL, INC.;** §
**FRANK DIMICELLI; FREDERICK W.** §
**RUST; GARRY MADALINE; GEORGE** §
**FILPANSICK; GERALD P. CASTER;** §
**GERHARDT G. HARTMAN; GIL** §
**DESHAZO; GOLDENGUARD** §

**FINANCIAL; GRACE LIFE
INVESTMENTS; GREGORY DAILEY;
GREGORY RAINS HARPER;
GREGORY RICKS; HARRY GREEN;
HERITAGE FINANCIAL AND
INSURANCE SERVICES, INC.;
HOLLIE CHEEVERS GANDY; HOLLIS
STEVEN HUFSTETLER, SR.; INFINITY
ASSET MANAGEMENT, LLC;
INTEGRITY CAPITAL ADVISORY,
LLC; INVESTMENT INCOME GROUP,
LLC; IWM INVESTMENTS, LLC;
JACK ROSENQUIST; JAMES
BILLINGTON; JAMES CLEARY DBA
OAK RIDGE FINANCIALS, LLC; OAK
RIDGE FINANCIALS, LLC; JAMES R.
SMITH; JAMES T. PAYTON; JANET
KUSCH; JBH SECURITIES; JEFF S.
GARRETT; JERRY GEORGOPOULOS;
JERRY KAMMER; JERRY TUMA; JIM
CLARY; JIM HOOD COMPANY; JIM
W. BELL; JOHN GISSAS; JOHN JOST;
JOHN MEACHAM; JONATHAN
BROOKS; JOSEPH HOPKINS; JTA
SECURITIES MANAGEMENT, INC.
DBA TITAN SECURITIES; KANSAS
INSTITUTE FOR MONEY
MANAGEMENT NKA AE MARKET
INITIATIVES, LLC; KEITH WEST;
KYLE MANKIN; LARRY D. HORN;
LEGACY PLANNING GROUP, INC.;
LESLIE RHODES; LIFE ENRICHMENT
HOLDINGS, LLC; LIFE FINANCIAL
GROUP, LLC; LIFE FORTRESS
GROUP, LLC; LIFE SETTLEMENT
OPTIONS, LLC; LLOYD LOWE SR.;
LUXURY MANAGEMENT, LLC;
MARK BOWLES; MARK ZOUZALIK;
MAXING MONEY SOLUTIONS, INC.;
MICHAEL GISSAS; MICHAEL
MCGARRAH; MIDDLETON &
ASSOCIATES; MILKIE FERGUSON
INVESTMENTS, INC.; MONTGOMERY
SERVICES, INC.; MONUMENT
INSURANCE & FINANCIAL
SERVICES, INC.; MUCH FINANCIAL**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**SERVICES; NECIA B. COBB AKA**
**NECIA BISHOP COBB; NEW**
**ENGLAND ALTERNATIVE**
**INVESTMENTS, INC.; NEW LIFE**
**ASSETS, LLC; NEW PROSPERITY**
**INVESTMENTS, INC.; NICHE**
**INVESTMENTS GROUP, LLC;**
**OHLHABER ASSET MANAGEMENT,**
**LLC; PAIGE BARNES; PARKITT AND**
**WHAITE, INC.; PARTNERS**
**PORTFOLIO SOLUTIONS, INC.; PAUL**
**VALENCIA; PEGASUS LIVING**
**GROUP, INC.; PHILLIP BELLINGAN;**
**PILLAR I LS FUND, LLC; PITTS-TRC;**
**POWERSTREAM INVESTMENT**
**CORPORATION; PRIVATE ASSET**
**GROUP, INC.; PROFESSIONAL**
**INSURANCE ELITE AGENCY, LLC; R**
**SQUARED, INC.; RANDAL WALLIS;**
**RANDS AGENCY, INC.; RAY HUGHES;**
**RAZOR FINANCIAL SERVICES, LLC;**
**RESALE AND VALUATION SERVICES,**
**LLC; RETIREMENT OPTIONS LLC;**
**RICHARD TILFORD; RICHARD**
**WONG; RICK TANKERSLEY;**
**ROBERT H. WATLINGTON; ROBERT**
**M. ROUNTREE; ROBERT ROUNTREE,**
**JR.; RODGER SPROUSE; RONNIE**
**KNOY; RYAN COWLEY; SANDRA**
**KNOY; SCHANNA FINANCIAL &**
**INSURANCE SERVICES, INC.; SCOTT**
**COLEMAN DBA KRD INSURANCE**
**SERVICES, INC.; SCOTT SCHOLZ;**
**SCOTT UNCLEBACH; SECURE FIRST,**
**INC.; SECURE RETIREMENT**
**SOLUTIONS, LLC; SENIOR**
**ADVISORS, LLC; SENIOR**
**EDUCATION SERVICES, INC.; SHAUN**
**CHIDESTER; SHERYL HANSON;**
**SILAS HUGHES, JR.; SMR LS FUND II,**
**LLC; SMR LS FUND, LLC; SPECTRUM**
**ADVISORS, INC.; STEPHANIE M.**
**LUCKE; STEVE BELL; STEVEN M.**
**BROWN; STEVEN SKIJUS;**
**STONEHURST SECURITIES, INC.;**
**STRATEGIC INSURANCE SERVICES;**

§

| | |
|---|---|
| SUCCESSFUL MONEY MANAGEMENT, INC.; SUSAN J. PAYTON; SUZANNE FILPANSICK; TAX RECOVERY, INC.; TERRANCE J. FITCH; TERRY AND ASSOCIATES, INC.; TERRY JOHNSON; THE ARBITRAGE ADVISORY GROUP, INC.; THE ELISHA GROUP, LLC; THE INFINITY PLANNING & MARKETING GROUP, INC.; THE MERIDIUS GROUP; THE PROPERTY PEOPLE, LLC; THE STRICKLAND FINANCIAL GROUP, INC.; THOMAS MONTGOMERY; THOMAS QUINN; THOMAS R. MCELROY; TIM WATTERS; TITAN SECURITIES & JTA SECURITIES MANAGEMENT, INC. DBA TITAN SECURITIES; TOM NEWMAN; TRACY SPAETH; UNCOMMON WEALTH MANAGEMENT, LLP; UNITED SENIOR ADVISORS GROUP; VAGNOZZI PROPERTIES, INC.; VERNON BELL DBA VAST DATA SYSTEMS, INC.; VICTOR JOHNSON; WILLIAM DUNAWAY; WILLIAM G. BALL; WILLIAM K. NICHOLS; WILLIAM R. BREWER; AND WORTH FINANCIAL GROUP, INC. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

H. Thomas Moran II ("Moran" or the "Trustee"), as chapter 11 Trustee for Life Partners Holdings, Inc. ("LPHI"),[1] and as the sole director of Life Partners, Inc. ("LPI") and LPI Financial Services, Inc. ("LPIFS", and together with LPI, the "Subsidiary Debtors") (collectively "Life Partners" or "Plaintiffs"), file this *Original Complaint* against 72 Vest Level Three LLC; A

---

[1] Case No. 15-40289-RFN-11.

**ORIGINAL COMPLAINT**                                                       **PAGE 5**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

Better Financial Plan, LLC; A. Nick Coppolo; Abio Financial Group, Inc.; Advance Level Solutions, LLC; Afrain Cavazos; Alchemy Advisory Group, Inc.; All About Seniors; Alliance Affiliated Equities Corporation; Alliance of Professionals for Business; Alvin L. Lee; AMZ Financial Insurance Services; Andy Lawson; Assured Retirement, LLC; Bailey Financial; Bay Wine, Inc.; Brent Husted; Business Legacy, Inc.; Carrie Bitros; Cary Spector; Charles Clarkson; Charles Welde; Charter Insurance Brokerage, Inc.; Chartwell Asset Management, Inc.; Chidester Investment, LLC; Christine Smith; Clark Financial Group, Inc.; Clear Sum, LLC; Clint Perrin dba Visionary Capital Planning; Clyde Jones; Comprehensive Financial Services, LLC; CPF Health Benefits Insurance Agency, Inc.; Craig Todd; Crossroads Agency; D.R. Saur Financial, Inc.; Darrell McCauley; David Barr; David Eiland; David P. Leeman; David Valencia; Positive Rate Investments, LLC; Dean Vagnozzi; Dean Vagnozzi dba ABetterFinancialPlan.com, LLC; Deckco, Inc.; Dennis Lagow; Diamond Safe Financial, LLC; Don Ballew; Don Wilson; Donald L. Ashberry; Donald Rasmussen; Douglas Cassel; Eagle One Investments, LLC fbo Infinity Asset Management, LLC; Earl F. Gillham dba Flatlander Financial Inc.; EDI Insurance Agency; Educated Investment Group; Elizabeth Whitlock; Elizabeth Whitlock Investments, LLC; Ethan Bonar; Fei Havenor; Filpansick Holdings, LLC; First Up, Inc.; Flatlander Financial, Inc.; Frank Dimicelli; Frederick W. Rust; Garry Madaline; George Filpansick; Gerald P. Caster; Gerhardt G. Hartman; Gil DeShazo; Goldenguard Financial; Grace Life Investments; Gregory Dailey; Gregory Rains Harper; Gregory Ricks; Harry Green; Heritage Financial and Insurance Services, Inc.; Hollie Cheevers Gandy; Hollis Steven Hufstetler, Sr.; Infinity Asset Management, LLC; Integrity Capital Advisory, LLC; Investment Income Group, LLC; IWM Investments, LLC; Jack Rosenquist; James Billington; James Cleary dba Oak Ridge Financials, LLC; Oak Ridge Financials, LLC; James R. Smith; James T. Payton; Janet Kusch; JBH Securities; Jeff S. Garrett;

**ORIGINAL COMPLAINT**                                                                                      **PAGE 6**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

Jerry Georgopoulos; Jerry Kammer; Jerry Tuma; Jim Clary; Jim Hood Company; Jim W. Bell; John Gissas; John Jost; John Meacham; Jonathan Brooks; Joseph Hopkins; JTA Securities Management, Inc. dba Titan Securities; Kansas Institute for Money Management nka AE Market Initiatives, LLC; Keith West; Kyle Mankin; Larry D. Horn; Legacy Planning Group, Inc.; Leslie Rhodes; Life Enrichment Holdings, LLC; Life Financial Group, LLC; Life Fortress Group, LLC; Life Settlement Options, LLC; Lloyd Lowe Sr.; Luxury Management, LLC; Mark Bowles; Mark Zouzalik; Maxing Money Solutions, Inc.; Michael Gissas; Michael McGarrah; Middleton & Associates; Milkie Ferguson Investments, Inc.; Montgomery Services, Inc.; Monument Insurance & Financial Services, Inc.; Much Financial Services; Necia B. Cobba aka Necia Bishop Cobb; New England Alternative Investments, Inc.; New Life Assets, LLC; New Prosperity Investments, Inc.; Niche Investments Group, LLC; Ohlhaber Asset Management, LLC; Paige Barnes; Parkitt And Whaite, Inc.; Partners Portfolio Solutions, Inc.; Paul Valencia; Pegasus Living Group, Inc.; Phillip Bellingan; Pillar I LS Fund, LLC; Pitts-TRC; Powerstream Investment Corporation; Private Asset Group, Inc.; Professional Insurance Elite Agency, LLC; R Squared, Inc.; Randal Wallis; Rands Agency, Inc.; Ray Hughes; Razor Financial Services, LLC; Resale and Valuation Services, LLC; Retirement Options LLC; Richard Tilford; Richard Wong; Rick Tankersley; Robert H. Watlington; Robert M. Rountree; Robert Rountree, Jr.; Rodger Sprouse; Ronnie Knoy; Ryan Cowley; Sandra Knoy; Schanna Financial & Insurance Services, Inc.; Scott Coleman dba KRD Insurance Services, Inc.; Scott Scholz; Scott Unclebach; Secure First, Inc.; Secure Retirement Solutions, LLC; Senior Advisors, LLC; Senior Education Services, Inc.; Shaun Chidester; Sheryl Hanson; Silas Hughes, Jr.; SMR LS Fund II, LLC; SMR LS Fund, LLC; Spectrum Advisors, Inc.; Stephanie M. Lucke; Steve Bell; Steven M. Brown; Steven Skijus; Stonehurst Securities, Inc.; Strategic Insurance Services; Successful Money Management,

Inc.; Susan J. Payton; Suzanne Filpansick; Tax Recovery, Inc.; Terrance J. Fitch; Terry and

Associates, Inc.; Terry Johnson; The Arbitrage Advisory Group, Inc.; The Elisha Group, LLC;

The Infinity Planning & Marketing Group, Inc.; The Meridius Group; The Property People,

LLC; The Strickland Financial Group, Inc.; Thomas Montgomery; Thomas Quinn; Thomas R.

McElroy; Tim Watters; Titan Securities & JTA Securities Management, Inc. dba Titan

Securities; Tom Newman; Tracy Spaeth; Uncommon Wealth Management, LLP; United Senior

Advisors Group; Vagnozzi Properties, Inc.; Vernon Bell dba Vast Data Systems, Inc.; Victor

Johnson; William Dunaway; William G. Ball; William K. Nichols; William R. Brewer; and

Worth Financial Group, Inc. (collectively, the "Defendant Licensees"), and would respectfully

show this Court the following:

## I.      INTRODUCTION

1.      Life Partners was in the business of marketing and selling fractional interests in

the proceeds of life insurance policies.  From at least on or about January 1, 2007 through on or

about February 1, 2015, Life Partners, through its former CEO Brian Pardo ("Pardo") and other

accomplices, devised and implemented a scheme to defraud investors ("Investors") in its

investment contracts and to obtain money and property from these Investors by false and

fraudulent pretenses, representations, and promises.  As a part of this scheme, Life Partners:

(a)      purchased life insurance policies on the life settlement market with one or more

accompanying life-expectancy estimates prepared by industry-recognized

underwriters employing a methodology universally recognized in the insurance

industry;

(b)      marketed fractional interests in the proceeds of these life insurance policies to

retail Investors by utilizing a different life expectancy estimate (prepared at the

direction of Life Partners) that significantly underestimated the life expectancy of the insured; and

(c)     employed a multi-layered sales team, referred to as "<u>Licensees</u>,"[2] that aggressively marketed the fractional interests, primarily to Investors with little or no expertise in the life-settlement industry, and wholly concealed from these Investors that (i) Life Partners held industry-standard life expectancy estimates that predicted the insured would likely live longer than the life expectancy estimate prepared at the direction of Life Partners executives; and (ii) Life Partners and its sales team of Licensees were receiving large and excessive commissions, at times exceeding the actual purchase price of the policies.

2.      It was a further part of the scheme to defraud Investors that, in or about January 1999, Life Partners (through its CEO Brian Pardo) hired a medical doctor, Donald Cassidy ("<u>Cassidy</u>"), with no actuarial experience or training, and no experience in rendering life expectancies, to prepare life expectancies ("<u>LEs</u>"), which Life Partners and its Licensees used to market the fractional interests to retail Investors.  Life Partners typically purchased those policies on which a significant discrepancy existed between the independent LE and the Cassidy LE, so that it could create a fraudulently inflated arbitrage between the low price it paid for the policy (based on the longer LE) and the higher price at which it sold investment contracts to Investors (based on the shorter Cassidy LE).

3.      Life Partners and its Licensees marketed the investments as a humanitarian way to provide liquidity to dying people in need, never disclosing that Life Partners typically made more money off the deal than the insureds selling their own life policies.  In fact, Life Partners

---

[2] To the extent Plaintiffs use the term "Licensees" in this Complaint to describe certain conduct, such a term encompasses conduct also by the Defendant Licensees.

and its network of Licensees—who had no specialized training—together pocketed approximately 30-35% of all Investor monies, an amount well beyond the typical commission given to investment advisers or brokers.

4. Life Partners advertised that funds sufficient to pay premiums on the subject life insurance policies would be escrowed and that, in most cases, Investors would not have to pay premiums after the date of the initial investment. Not surprisingly, the vast majority of the insureds outlived the Cassidy LEs, which were much shorter than the independent third-party LEs that Life Partners had in its possession when it initially purchased the policies. In the end, many Investors were forced to pay premiums far beyond the amounts originally escrowed, significantly lessening the value of their investments, and, in many cases, creating financial distress for Investors resulting from their need to continue to pay premiums. As a result, numerous Investors have lost money from their investment with Life Partners, despite being assured of double-digit returns.

5. Further perpetrating the fraud, the Licensees disseminated misleading materials and information, specifically including the Cassidy LEs attributed to the policies underlying the investment contracts for sale, on which Life Partners' Investors relied when determining whether or not to invest.

6. Life Partners created the significant spread between the purchase price of each policy and the sale price it required of Investors in order to charge excessive fees and commissions. The total fees and commissions paid to Life Partners and the Licensees often exceeded 30% of the total acquisition costs that Investors paid per policy. The commissions to the Licensees were well in excess of the 1-2% commission paid to the seller's agent, and beyond the 3% that must be disclosed by an investment adviser under the Texas Securities Act. These

**ORIGINAL COMPLAINT** **PAGE 10**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

exorbitant commissions were hidden from Investors. Investors were not aware that Licensees on average received approximately 12% of the total investment dollars.

7. The Defendant Licensees are among Life Partners' Licensees who perpetrated the fraud described herein. Life Partners and its Licensees, including the Defendant Licensees, perpetrated the fraud on the Investors by (1) accepting fees and commissions well in excess of industry norms and often exceeding the true value of the underlying life settlement policy; (2) misrepresenting the nature and accuracy of the life expectancy of the insured, including concealing the existence of longer estimated life expectancies; and (3) misrepresenting the likely returns on investments, among other things. The Defendant Licensees received in excess of $53.7 million from Life Partners from 2008 through 2015 in fees and commissions that were never disclosed to Investors from the sale of Life Partners' investment contracts. Plaintiffs bring this adversary proceeding for the harm caused to the estate and for the return of these undisclosed fees and commissions paid to the Defendant Licensees.

## II. PARTIES

8. The Trustee is an individual and may be served with pleadings and process in this adversary proceeding through the undersigned counsel.

9. Life Partners Holdings, Inc. is a Texas corporation and may be served with pleadings and process in this adversary proceeding through the undersigned counsel.

10. Life Partners, Inc. is a Texas corporation and may be served with pleadings and process in this adversary proceeding through the undersigned counsel.

11. LPI Financial Services, Inc. is a Texas corporation and may be served with pleadings and process in this adversary proceeding through the undersigned counsel.

**ORIGINAL COMPLAINT** **PAGE 11**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

12.     72 Vest Level Three LLC is an Illinois corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Gary J. Rhodes, at 305 West Professional Park Avenue, Effingham, Illinois 62401, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

13.     A Better Financial Plan, LLC is a Pennsylvania limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 114 Ithan Lane, Collegeville, Pennsylvania 19426, or 1021 West 8th Avenue Prussia, Pennsylvania 19406, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

14.     A. Nick Coppolo is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4 Matador, Austin, Texas 78746 or 2322 Matador Circle, Austin, Texas 78746, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

15.     Abio Financial Group, Inc. is a Texas Corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, John M. Abio, at 10670 North Central Expressway, Suite 440, Dallas, Texas 75231, or 11551 Forrest Central Drive, No. 101, Dallas, Texas 75243, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

16.     Advance Level Solutions, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Bruce L. Mansfield, at 1550 North Norwood Drive, Suite 107, Hurst, Texas 76054, or P.O. Box 969, Colleyville, Texas 76034, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

17.    Afrain Cavazos is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1117 Elm Grove Road, Seguin, Texas 78155-1155, or 20026 Cypresswood Glen, Spring, Texas 77373, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

18.    Alchemy Advisory Group, Inc. is a Florida corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Judith Joseph Snyder, at 100 main Street, Suite 207, Safety Harbor, Florida, 34695, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

19.    All About Seniors is a Texas Corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Scot Kuslak, at 21060 CR 482, Lindale, Texas 75771, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

20.    Alliance Affiliated Equities Corporation is a Kansas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, David P. Dyer, at 7227 Metcalf, Suite 201, Overland Park, Kansas 66204, or One Ward Parkway, Suite 345, Kansas City, Missouri 64112, pursuant to the Federal Rules of Civil Procedure wherever it may be found.

21.    Alliance of Professionals for Business is a California Corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its officer Neal B. Inscoe at 29822 Wilkes Road, Valley Center, California 92082, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

22.     Alvin L. Lee is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4802 Alamo Road, Amarillo, Texas 79110-4714, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

23.     AMZ Financial Insurance Services is an Iowa corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Corporation Service Company, at 505 4th Avenue, Suite 279, Des Moines, Iowa 50309, or 14225 University Avenue, Suite 210, Waukee, Iowa 50263, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

24.     Andy Lawson is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1509 Pecan Valley Court, Corinth, Texas 76210-1930, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

25.     Assured Retirement, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Benjamin Swinford, at 1312 Regency Court, Southlake, Texas 76092, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

26.     Bailey Financial is a Texas sole proprietorship and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through J.D. Bailey at 4975 Lusk Lane, Flower Mound, Texas 75028-3132,  or P.O. Box 1752, Aledo, Texas 76008, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

27.     Bay Wine, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its president, Richard Vincent, at 3915 McDermott, Suite 100, Plano, Texas 75025, or 3808 Whiffletree Court, Plano, Texas 75023, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

28.     Brent Husted is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4040 Alicante Avenue, Fort Worth, Texas 76133-5563, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

29.     Business Legacy, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its president, John Pollock, at 800 North Watters Road, Suite 120, Allen, Texas 75013, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

30.     Carrie Bitros is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 872 Brooks Lane, Sadler, Texas 76264, or 71 Megan Road, Whitesboro, Texas 76273, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

31.     Cary Spector is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2504 Invenness Lane, Plano, Texas 75075, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

32.     Charles Clarkson is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 602 Fenwick, Windcrest, Texas 78239, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

33.     Charles Welde is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 11 Chestnut Road, Newton Square, Pennsylvania 19073, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

34.     Charter Insurance Brokerage, Inc. is a Florida corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent,

Mark E. Nichols, at 1415 panther Lane, Suite 244, Naples, Florida 34109, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

35.     Chartwell Asset Management, Inc. is a Canadian entity and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Clark Willson, LLP, at 900 – 855 West Georgia Street, Vancouver, British Columbia V6C3H1 Canada, or 15957 – 84th Avenue, Suite 303, Surrey, British Columbia V4NOW7 Canada, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

36.     Chidester Investment, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its president, Shaun Chidester, at 2828 Everett Drive, Friendswood, Texas 77546, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

37.     Christine Smith is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1234 Del Este Avenue, Suite 802, Denham Springs, Louisiana 70726, or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

38.     Clark Financial Group, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its president, William R. Clark, at 12 Horizon Point, Frisco, Texas 75034, or 6898 Lebanon Road, Suite 101, Frisco, Texas 75035, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

39.     Clear Sum, LLC is a Texas limited liability  and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its president, Suzie Payton, at 13415 Briarbrook Drive, Dallas, Texas 75234, or 14232 Marsh Lane, Suite 68, Addison, Texas 75001, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

**ORIGINAL COMPLAINT**                                                                                          **PAGE 16**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

40.     Clint Perrin dba Visionary Capital Planning is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 555 IH 35 South Suite 102, New Braunfels, Texas 78130, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

41.     Clyde Jones is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at P.O. Box 189, Whitesboro, Texas 76273, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

42.     Comprehensive Financial Services, LLC is a former Nevada limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its managers, Rodney Ballard or Steve Roeth, at 640 Inglenook Drive, Las Vegas, Nevada 89123, or 17200 North Perimeter, Suite 203, Scottsdale, Arizona 85255, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

43.     CPF Health Benefits Insurance Agency, Inc. is a California corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Harry J. Wilson, at 3425 West Figarden Drive, Fresno, California 93711, or 1125 West Celeste Avenue, Fresno, California, 93711, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

44.     Craig Todd is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 5406 Somerset Drive, Rowlett, Texas 75089, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

45.     Crossroads Agency is a Texas entity and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Monte Roach, at

**ORIGINAL COMPLAINT**                                                              **PAGE 17**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

5809 87th Street, Lubbock, Texas 79424, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

46.    D.R. Saur Financial, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through registered agent, Daniel Saur, at 12900 Preston Road, Suite 400, Dallas, Texas 75230, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

47.    Darrell McCauley is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 422 State Highway 78 North, Farmersville, Texas 75442, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

48.    David Barr is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1760 Euclid Street #502, Washington, D.C. 20009, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

49.    David Eiland is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 10130 Quail Creek Lane, Colorado Springs, Colorado 80920-1451, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

50.    David P. Leeman is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 10010 Silver Creek Road, Dallas, Texas 75243-4614, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

51.    David Valencia is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 920 Saratoga Avenue, Suite #107, San Jose, California 95129, or 16229 Saint Lawrence Drive, Morgan Hill, California 95037-7822, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

52.     Positive Rate Investments, LLC is a Virginia limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Leonard A. Mikus, at 2950 Baltic Avenue, Suite 401, Virginia Beach, Virginia 23451, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

53.     Dean Vagnozzi is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 114 Ithan Lane, Collegeville, Pennsylvania 19426, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

54.     Dean Vagnozzi dba ABetterFinancialPlan.com, LLC is a Pennsylvania Limited Liability Company who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 114 Ithan Lane, Collegeville, Pennsylvania 19426, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

55.     Deckco, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Steven B. Deck, at 2012 Cindy Lane, Denton, Texas 76207, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

56.     Dennis Lagow is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 200 Southridge Lakes Parkway, Southlake, Texas 76092, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

57.     Diamond Safe Financial, LLC is a Texas Limited Liability Company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Robert J. Henry at 2009 Garden View Lane, Richardson, Texas 75080, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

58.    Don Ballew is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at P.O. Box 176, Frost, Texas 76641, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

59.    Don Wilson is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 75 Tingler Lane, Marathon, Florida 33050-2506, or 1522 Sunny Slope Drive, Carrolton, Texas 75007, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

60.    Donald L. Ashberry is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4106 Constitution Drive, Frisco, Texas 75034-6317, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

61.    Donald Rasmussen is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2552 Blue Meadow Drive, Temple, Texas 76502, or 5120 Sunflower Lane, Temple, Texas 76502-4889, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

62.    Douglas Cassel is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 7612 Meadowhaven Drive, Dallas, Texas 75254, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

63.    Eagle One Investments, LLC fbo Infinity Asset Management, LLC is a North Dakota limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136, or at P.O. Box 6245, Bismarck, North Dakota 58506, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

64. Earl F. Gillham dba Flatlander Financial Inc. is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 5414 County Road 1250, Lubbock, Texas 79407, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

65. EDI Insurance Agency is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Geoffrey A. Gerard, at 8439 San Leandro Drive, Dallas, Texas 75218, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

66. Educated Investment Group is a Texas entity and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through registered agent or officer, Patricia Parker at 3612 Austin Court, Flower Mound, TX 75028  or at 2201 Long Prairie Road, Suite 107-347, Flower Mound, Texas 75022, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

67. Elizabeth Whitlock is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2208 FM 1434, Cleburne, Texas 76033, or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

68. Elizabeth Whitlock Investments, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Elizabeth Whitlock at 2028 FM 1434, Cleburne, Texas 76033, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

69. Ethan Bonar is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 826 Market Street, Building M, Suite 250, Allen,

Texas 75013, or 1915 Landridge Drive, Allen, Texas 75013-5307, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

70.     Fei Havenor is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 664 Coronado Hills Drive, San Marcos, California 92078-5006, or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

71.     Filpansick Holdings, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, George J. Filpansick, at 304 Sandy Lane, Royse City, Texas 75189, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

72.     First Up, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Roger King, at 5840 Spring Valley, Suite 1604, Dallas, Texas 75254, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

73.     Flatlander Financial, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Earl F. Gillham, at 5414 County Road 1250, Lubbock, Texas 79407, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

74.     Frank Dimicelli is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 10235 South State Highway 123, Seguin, Texas 78155, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

**ORIGINAL COMPLAINT                                                                             PAGE 22**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

75.    Frederick W. Rust is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2011 Fawnfollow Court, Arlington, Texas 76001-5662, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

76.    Garry Madaline is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 19022 East Eaglenest Drive, Rio Verde, Arizona 85263, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

77.    George Filpansick is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 304 Sandy Lane, Royse City, Texas 75189-3628, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

78.    Gerald P. Caster is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2113 Highway 62 East, Suite #4, Mountain Home, Arkansas 72653, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

79.    Gerhardt G. Hartman is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 213 Majestic Grove, San Antonio, Texas 78258, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

80.    Gil DeShazo is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 6458 Bayhill Drive, Abilene, Texas 79606-5621, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

81.    Goldenguard Financial is a Florida corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, SmallBiz Agents, LLC, at 75 North Woodward Avenue, Suite 1000, Tallahassee, Florida 32313, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

**ORIGINAL COMPLAINT**                                                                                   **PAGE 23**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

82.     Grace Life Investments may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its officer or agent, David See at 74 West Hidden Way, Shady Shores, Texas 76208, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

83.     Gregory Dailey is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 18620 King Road, Tomball, Texas 77375, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

84.     Gregory Rains Harper is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2020 Camelot Drive, Grapevine, Texas 76051, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

85.     Gregory Ricks is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2800 Veterans Boulevard, Suite 204, Metairie, Louisiana 70002, or 1500 Seminole Avenue, Apartment B, Metairie, Louisiana 70005-5301, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

86.     Harry Green is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 5482 Travis Drive, Frisco, Texas 75034-5914, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

87.     Heritage Financial and Insurance Services, Inc. is a California corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Brian Dean Gibbs at 11440 W. Bernardo Court, Suite 106, Poway, California 92064, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

**ORIGINAL COMPLAINT**                                                                                               **PAGE 24**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

88.     Hollie Cheevers Gandy is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 7812 Tripp Ave, Amarillo, TX 79121, or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

89.     Hollis Steven Hufstetler, Sr. is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 7812 Tripp Avenue, Amarillo, Texas 79121, or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

90.     Infinity Asset Management, LLC is a North Dakota limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136, or at P.O. Box 6245, Bismarck, North Dakota 58506, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

91.     Integrity Capital Advisory, LLC is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, National Registered Agents, Inc., at 1999 Bryan Street, Suite 900, Dallas, Texas 75201, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

92.     Investment Income Group, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Steven B. Deck, at 2012 Cindy Lane, Denton, Texas 76207, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

93.     IWM Investments, LLC is a former Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its member, Robert Badali, at 6860 North Dallas Parkway, #200, Plano, Texas 75024, or 555

Republic Drive, Suite 200, Plano Texas 75074, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

94.    Jack Rosenquist is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 47670 Loweland Terrace, Sterling, Virginia 20165, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

95.    James Billington is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 110 Columbia Street, Suite 103, Vancouver, Washington 98662, or 8010 NE 104th Avenue, Vancouver, Washington 98662-3088, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

96.    James Cleary dba Oak Ridge Financials, LLC is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 7413 Hiddencreek Drive, Dallas, Texas 75252, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

97.    Oak Ridge Financials, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its officer or agent, James Cleary at 7413 Hiddencreek Dr., Dallas, TX 75252, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

98.    James R. Smith is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 6520 Old Gate Road, Plano, Texas 75024, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

99.    James T. Payton is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4315 Sexton Lane, Dallas, Texas 75229, or 13415

Briarbrook Drive, Dallas, Texas 75234-5104, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

100.   Janet Kusch is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2023 Lockhill Selma Road, San Antonio, Texas 78231, or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

101.   JBH Securities is a Texas Corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent or officer, Jay Heimburger, at 1507 San Rafael, Dallas, Texas 75218, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

102.   Jeff S. Garrett is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 8438 San Fernando Way, Dallas, Texas 75218-4303, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

103.   Jerry Georgopoulos is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 9127 Cochran Bluff Lane, Dallas, Texas 75220, or 223 Pecan Meadow Drive, Baton Rouge, Louisiana 70810-9501, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

104.   Jerry Kammer is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1516 Pagewynne Drive, Plano, Texas 75093, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

105.   Jerry Tuma is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 14901 Quorum Drive, Suite 785, Dallas, Texas 75254, or 15800 Spectrum Drive, Apartment 1407, Addison, Texas 75001-6375, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

106. Jim Clary is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 5107 91st, Lubbock, Texas 79424, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

107. Jim Hood Company is a Texas Corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent James O. Hood Jr. at 1306 Brookstone Lane, Duncanville, Texas 75137, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

108. Jim W. Bell is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4 Spyglass Court, Roanoke, Texas 76262-5569, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

109. John Gissas is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 51 North Main Street, Suite 2A, Southington, Connecticut 06489, or 12 Sherry Drive Southington Connecticut 06489-2842, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

110. John Jost is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 705 Cynthia Court, Mt. Juliet, Tennessee 37122, or 15322 Scarborough Court Chesterfield, Missouri 63017-7029, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

111. John Meacham is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at P.O. Box 969, Colleyville, Texas 76034, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

112.    Jonathan Brooks is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 124 Laurens Street NW, Aiken, South Carolina 29801, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

113.    Joseph Hopkins is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 9720 Cypresswood Drive, Suite 245, Houston, Texas 77070, or 15402 Prade Ranch Lane, Cypress, Texas 77429-6439, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

114.    JTA Securities Management, Inc. dba Titan Securities is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its president, Brad Brooks, at 14801 Quorum Drive, Suite 260, Dallas, Texas 75254, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

115.    Kansas Institute for Money Management nka AE Market Initiatives, LLC is a Kansas Limited Liability Company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through Amy Klotz at 2950 SW McClure Rd., Topeka, Kansas 66614, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

116.    Keith West is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 300 Main Street SW N213, Washington, D.C. 20024, or 241 Independence Place, Cullowhee, North Carolina, 28723-8122, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

117.    Kyle Mankin is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1604 EMS Road West, Fort Worth, Texas 76116, or 6333 Juneau Road, Fort Worth, Texas 76116, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

118.    Larry D. Horn is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 8100 Landsman Drive, Austin, Texas 78736, or 2010 Bluff Circle, Salado, Texas 76571, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

119.    Legacy Planning Group, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its president, Troy W. McMahon, at 14330 Marin Drive, Cypress, Texas 77429, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

120.    Leslie Rhodes is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 10807 Richmond Avenue, Lubbock, Texas 79424, or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

121.    Life Enrichment Holdings, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Geoff B. Horst, at 6802 Cub Lane, Sanger, Texas 76266, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

122.    Life Financial Group, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Oscar Dominguez, at 11125 La Quinta Place, Suite A, El Paso, Texas 79936, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

123.    Life Fortress Group, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Jerry E. Tuma,  at 14901 Quorum Drive, Suite 785, Dallas, Texas 75254, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

124. Life Settlement Options, LLC is a Texas Limited Liability Company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Corporation Service Company dba CSC Lawyers Inc. Service Co., at 701 Brazos Street, Suite 1050, Austin, Texas 78701, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

125. Lloyd Lowe Sr. is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 8330 LBJ Freeway, Suite 500, Dallas, Texas 75243, or 1022 Creekwood Drive, Garland, Texas 75044-2410, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

126. Luxury Management, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent or officer, John T. Mints, at 10 Trailside Court, Mansfield, Texas 76063-5463, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

127. Mark Bowles is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 5803 Morningside Avenue, Dallas, Texas 75206, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

128. Mark Zouzalik is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4104 86th Street, Lubbock, Texas 79423, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

129. Maxing Money Solutions, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Sherry S. Ingram, at 809 Kingwood Drive, Tyler, Texas 75703, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

130.    Michael Gissas is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 51 North Main Street, Suite 2A, Southington, Connecticut 06489, or 12 Sherry Drive Southington Connecticut 06489-2842, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

131.    Michael McGarrah is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2704 Willow Creek Court, Bedford, Texas 76021-7215, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

132.    Middleton & Associates is a Texas Limited Liability Company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent or officer, Floyd Eugene Middleton, Jr., at 834 East Bethel School Road, Coppell, Texas 75019, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

133.    Milkie Ferguson Investments, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Edward M. Milkie, at 8750 North Central Expressway, Suite 1700, Dallas, Texas 75231, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

134.    Montgomery Services, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Joe B. Hay, at 12705 Denton Drive, Suite 104, Dallas, Texas 75235, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

135.    Monument Insurance & Financial Services, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Robert C. Badali, at 4902 Arbor Glen Drive, McKinney, Texas 75070, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

136.    Much Financial Services is a California corporation  and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, CT Corporation System, at 818 West Seventh Street, Suite 930, Los Angeles, California 90017, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

137.    Necia B. Cobb is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 12708 Sunlight Drive, Dallas, Texas 75230-1834, or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

138.    New England Alternative Investments, Inc. is a Massachusetts Corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Ronald Leger, Jr., at 680 Mechanic Street, Suite 140, Leominster, Massachusetts 01453, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

139.    New Life Assets, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, William A. Gatlin, Jr., at 610 Heartland Drive, Allen, Texas 75002, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

140.    New Prosperity Investments, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Harry L. Green, at 5482 Travis Drive, Frisco, Texas 75034, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

141.    Niche Investments Group, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its

**ORIGINAL COMPLAINT**                                                          **PAGE 33**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

registered agent, Edmond Sansing, at 115 Red Fig Trail, San Antonio, Texas 78256, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

142.    Ohlhaber Asset Management, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Richard Ohlhaber, at 700 N. Carroll Avenue, Suite 130, Southlake, Texas 76092, or 2416 Creekwood Court, Keller, Texas 76428, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

143.    Paige Barnes is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 6407 County Road 7450, Lubbock, Texas 79424-8433, or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

144.    Parkitt And Whaite, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Tom S. Hunse, at 14784 Winwood Road, Dallas, Texas 75254, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

145.    Partners Portfolio Solutions, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Kim Butler, at 22790 Highway 259 South, Mt. Enterprise, Texas 75681, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

146.    Paul Valencia is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1021 Diadem Drive, San Jose, California 95116, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

147.    Pegasus Living Group, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its president,

**ORIGINAL COMPLAINT**                                                              **PAGE 34**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

Dale R. Ackerman, at 134 Clubhouse Drive, Lakeway, Texas 78734, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

148.    Phillip Bellingan is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2512 Dalgreen Drive, Plano, Texas 75075-6622, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

149.    Pillar I LS Fund, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, ASR Alternative Investments, LP, at 1203 South White Chapel Boulevard, Suite 250, Southlake, Texas 76092, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

150.    Pitts-TRC is a Texas entity and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent and/or officer, Clayton Pitts, at 5506 South Highway 349, Midland, Texas 79706, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

151.    Powerstream Investment Corporation is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Rick D. Tankersley, at 2520 Damsel Bella Boulevard, Louisville, Texas 75056, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

152.    Private Asset Group, Inc. was or is a California corporation, and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Burke A. Dambly at 3070 Bristol Street, Suite 500, Costa Mesa, California 92626, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

153.     Professional Insurance Elite Agency, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent William Bruce Campbell at 6300 Ridglea Place, Ste. 111, Fort Worth, Texas 76116 or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

154.     R Squared, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Jamie Rushing at 5222 Bayshore Drive, Athens, TX 75752, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

155.     Randal Wallis is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 111 Eagle Chase Lane, Pottsboro, Texas 75076-4884, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

156.     Rands Agency, Inc. is a Texas Corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent R. Larry Hankins at 515 Yaupon Drive, Garland, Texas 75044, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

157.     Ray Hughes is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 9476 County Road 2470, Rose City, Texas 75189-6791 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

158.     Razor Financial Services, LLC was or is a Texas limited liability company, and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent James Ikey at 103 Bayonne Drive, Mansfield, Texas 76063, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

159.    Resale and Valuation Services, LLC was or is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Aaron Edward Quihuis at 4633 Trevor Trail, Grapevine, Texas 76051-8435, or at 2801 Brazos Boulevard #5207, Euless, Texas 76039; or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

160.    Retirement Options LLC a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Shaver Law Firm, PLLC, at 18601 LBJ Freeway, Suite 301, Mesquite, Texas 75150, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

161.    Richard Tilford is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 15220 United States 377 South, Fort Worth, Texas 76126 or P.O. Box 26559, Fort Worth, Texas 76126-0559 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

162.    Richard Wong is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 619 Street Andrews Place, Coppell Texas 75019, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

163.    Rick Tankersley is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2520 Damsel Bella Boulevard, The Colony, Texas 75056 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

164.    Robert H. Watlington is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 946 Wiggins Parkway, Apartment 1121, Mesquite, Texas 75150-1485 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

165. Robert M. Rountree is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4520 Potomac Avenue, Dallas, Texas 75205-2633, or 1596 Barksdale Drive, Lewisville, Texas 75077, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

166. Robert Rountree, Jr. is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4520 Potomac Avenue, Dallas, Texas 75205, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

167. Rodger Sprouse is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 24806 101st Street, Lees Summit, Missouri, 64086-6601, or at 7300 West 110 Street, 7th Floor, Overland Park, Kansas, 66210 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

168. Ronnie Knoy is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 3903 SE Military Drive, Apartment 10306, San Antonio, Texas 78223-4563, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

169. Ryan Cowley is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 6732 Audubon Trail, Fort Worth, Texas 76132-3080, or at 1200 Summitt Avenue, Ste. 710, Fort Worth, Texas 76102, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

170. Sandra Knoy is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4501 Fairway Drive, Amarillo, Texas 79124, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

171.    Schanna Financial & Insurance Services, Inc. is a California corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Jasper C. Schanna at 31556 W. Nine Drive, Laguna Niguel, California 92677, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

172.    Scott Coleman dba KRD Insurance Services, LLC is an individual doing business as an Illinois limited liability company who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1101 Perimeter Drive, Suite 703, Schaumburg, Illinois 60173; Mr. Coleman is the registered agent for KRD Insurance Services, which and in that capacity may be served at the same address; pursuant to the Federal Rules of Civil Procedure Mr. Coleman may also be served wherever he may be found.

173.    Scott Scholz is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2514 Jones Avenue NE, Renton, Washington 98056 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

174.    Scott Unclebach is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1202 Aubrey Lane, Frisco, Texas 75033, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

175.    Secure First, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Richard Wong at 5001 Spring Valley Road, Ste. 1010E, Dallas, Texas 75244 or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

176.    Secure Retirement Solutions, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its

registered agent Lori M. Dimicelli at 10235 S. Highway 123, Seguin, Texas 78155, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

177.    Senior Advisors, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent John C. Dannenfeldt at 5200 Keller Springs Road, Apt. 1112, Dallas, Texas 75248, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

178.    Senior Education Services, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Bob E. Guess at 7001 Boulevard 26, Ste. 116, Fort Worth, Texas 76180 or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

179.    Shaun Chidester is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2858 Everett Drive, Friendswood, Texas 77546, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

180.    Sheryl Hanson is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4825 Heather Ranch Way, Rancho Cordova, California 95742, or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

181.    Silas Hughes, Jr. is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2301 Ridgmar Plaza, Unit 10, Fort Worth, Texas 76116 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

182.    SMR LS Fund II, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its agent Mark

McKay at 800 S.W. 9th Avenue, Amarillo, TX 79101, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

183.    SMR LS Fund, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Mark McKay at 800 S.W. 9th Avenue, Amarillo, Texas 79101, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

184.    Spectrum Advisors, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent J. Michael Reppert at 15301 Spectrum Drive, Ste. 115, Addison, Texas 75002, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

185.    Stephanie M. Lucke is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2706 Silverway Drive, Austin, Texas 78757-1711, or at 2604 Albata Avenue, Austin, Texas 78757-2105, or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

186.    Steve Bell is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4300 Portales Court, Arlington, Texas 76016, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

187.    Steven M. Brown is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2115 Preston Trail, Forney, Texas 75126, or at 200 Lee Street, Terrell, Texas 75160 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

**ORIGINAL COMPLAINT**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

188.   Steven Skijus is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 3405 West McKay Avenue, Tampa, Florida 33609 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

189.   Stonehurst Securities, Inc. was or is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 directly at 7300 W. 110th Street 7th Floor, Overland Park, Kansas 66210, or through its director Philip P. Borum at 2885 Alhambra Drive, Cameron Park, California 95682, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

190.   Strategic Insurance Services is an Oregon limited liability company, and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent David Ludwig at 121 SW Morrison Street, Ste. 600, Portland, Oregon 97204, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

191.   Successful Money Management, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Dan W. Allen at 2415 S. Kentucky, Amarillo, Texas 79109 or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

192.   Susan J. Payton is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 13415 Briarbrook Drive, Dallas, Texas 75234-5104 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

193.   Suzanne Filpansick is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 304 Sandy Lane, Rose City, Texas, 75189, or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

194.     Tax Recovery, Inc. is a Texas corporation, and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Hollis Steven Hufstetler at 18 Glenbrook Circle, Lucas, Texas 75002 or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

195.     Terrance J. Fitch is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 6547 Manzano Street, Chino, California 91710-6909, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

196.     Terry and Associates, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Timothy Terry at 4904 Argyle Lane, Argyle, Texas 76226, or directly at 17304 Preston Road, Ste. 205, Dallas, Texas 75252, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

197.     Terry Johnson is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 6901 65th Street S., Birmingham, Alabama 35212, or pursuant to the Federal Rules of Civil Procedure wherever he or she may be found.

198.     The Arbitrage Advisory Group, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Cathy S. Johnson at 4634 Bayberry Lane, Garland, Texas 75043, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

199.     The Elisha Group, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Michael McGown at 4502 Oxbow Circle, East Fulshear, Texas 77441, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

200.    The Infinity Planning & Marketing Group, Inc. was or is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its President Katharine M. Snyder at 320 Country Road 2135, Gainesville, Texas 76241, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

201.    The Meridius Group is a Nebraska entity and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 710 S. 13th Street, Ste. 900 PMB 302, Norfolk, Nebraska 68701 or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

202.    The Property People, LLC is a Texas limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Desert Palm Management at 1301 Ardglass Trail, Corinth, Texas 76210, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

203.    The Strickland Financial Group, Inc. is a Florida corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent, Malcolm Strickland, Jr. at 7370 College Parkway, Ste. 305, Fort Meyers, Florida 33907, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

204.    Thomas Montgomery is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 7413 Hiddencreek Drive, Dallas, Texas 75252-6325 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

205.    Thomas Quinn is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 11 Buckwalter Circle, Royersford, Pennsylvania, 19468-2733 or at 1150 First Avenue, Ste. 501, King of Prussia, Pennsylvania 19406, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

206. Thomas R. McElroy is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 807 Glen Abbey Drive, Mansfield, Texas 76063-3705, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

207. Tim Watters is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 15401 146th Avenue SE, Snohomish, Washington 98290, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

208. Titan Securities & JTA Securities Management, Inc dba Titan Securities is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Brad C. Brooks at 2548 Prestonwood Drive, Plano, Texas 75093, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

209. Tom Newman is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 707 W. Ohio, Midland, Texas, 79701, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

210. Tracy Spaeth is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2118 Chestnut Oak Circle, College Station, Texas 77845-4168, or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

211. Uncommon Wealth Management, LLP is a Texas limited liability partnership and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its officer Tracy Spaeth at 2118 Chestnut Oak Circle, College Station, Texas 77845-4168, or directly at 5012 50th Street #103, Lubbock, Texas 79414, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

**ORIGINAL COMPLAINT**                                                                                    **PAGE 45**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

212.    United Senior Advisors Group is a Pennsylvania corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its President Garry Madaline at 992 Old Eagle School Rd., Ste. 913, Wayne, Pennsylvania 19087-1803 or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

213.    Vagnozzi Properties, Inc. is a Pennsylvania corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its principal, Dean J. Vagnozzi at 114 Ithan Lane, Collegeville, PA, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

214.    Vernon Bell dba Vast Data Systems, Inc. is an individual doing business as a Texas corporation; Mr. Bell may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4700 N. Josey Lane, #3317, Carrollton, Texas 75010; Mr. Bell is also the registered agent for Vast Data Systems, Inc., which may be served by serving him at the same address; Mr. Bell or Vast Data Systems may also be served pursuant to the Federal Rules of Civil Procedure wherever either may be found.

215.    Victor Johnson is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 422 Lee Street, Cedar Hill, Texas 75104, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

216.    William Dunaway is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 3216 Bee Cave Road, Austin, Texas 78746, or at 3267 Bee Cave Road, Ste. 107, Austin, Texas 78746 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

217.    William G. Ball is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2012 Rue De St. Germaine, Austin, Texas 78746-1969 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

218.    William K. Nichols is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 325 Miron Drive, Ste. 130, Southlake, Texas 76092, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

219.    William R. Brewer is an individual who may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 8001 Schrade Road, Rowlett, Texas 75088, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

220.    Worth Financial Group, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Jim W. Clark at 16660 Dallas Parkway, Ste. 1600, Dallas, Texas 75248, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

## III.    JURISDICTION AND VENUE

221.    This Court has jurisdiction over this adversary proceeding.  28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper in this Court.  28 U.S.C. §§ 1408 and 1409.

222.    The statutory bases for the relief requested herein requested are 11 U.S.C. §§ 105(a), 541(a), 544, 547, 548, 550, and 551.

## IV.   FACTUAL BACKGROUND

### A.   Procedural History

223.   On January 20, 2015, LPHI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code thereby commencing its bankruptcy case (the "LPHI Bankruptcy Case").

224.   On January 30, 2015, the Office of the United States Trustee (the "U.S. Trustee") formed an official committee of unsecured creditors (the "LPHI Committee") in the LPHI Bankruptcy Case.

225.   Shortly after the LPHI Petition Date, the Securities and Exchange Commission (the "SEC") filed its *Motion Under 11 U.S.C. § 1104(a) for Appointment of a Chapter 11 Trustee*.[3]   On January 26, 2015, the U.S. Trustee filed its *Motion for an Order Directing the Appointment of a Chapter 11 Trustee*.[4]   The LPHI Committee joined the SEC's and U.S. Trustee's requests to appoint a Chapter 11 trustee and on March 10, 2015, the Court granted the request.[5]

226.   On March 13, 2015, the U.S. Trustee appointed Moran as the chapter 11 Trustee in the LPHI Bankruptcy Case,[6] and on Thursday, March 19, 2015, this Court affirmed Moran's appointment.[7]

227.   On April 7, 2015, in the Subsidiary Filing Order, this Court authorized the Trustee to (a) take the necessary steps to install the Trustee as the sole director of LPI and LPIFS and

---

[3] LPHI Bankruptcy Case, Dkt. No. 14.

[4] LPHI Bankruptcy Case, Dkt. No. 27.

[5] LPHI Bankruptcy Case, Dkt. No. 186.

[6] LPHI Bankruptcy Case, Dkt. No. 205.

[7] LPHI Bankruptcy Case, Dkt No. 225; LPHI Bankruptcy Case, Dkt. No. 229.

**ORIGINAL COMPLAINT**                                                                 **PAGE 48**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

(b) take all steps necessary to place LPI, LPIFS, and any other direct or indirect subsidiaries or affiliates of LPHI as the Trustee determined appropriate to file voluntary chapter 11 bankruptcy petitions.[8]

228.    Upon entry of the Subsidiary Filing Order, (a) the Trustee became the sole director of LPI and LPIFS; and (b) LPHI's business, as well as that of the Subsidiary Debtors, has continued to operate under the direction of the Trustee.[9]

229.    On May 19, 2015 (the "Subsidiary Petition Date"), certain direct and indirect subsidiaries of LPHI—namely the Subsidiary Debtors—filed their respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby initiating their bankruptcy cases (the "Subsidiary Bankruptcy Cases").  On the Subsidiary Petition Date, the Subsidiary Debtors filed their Emergency Motion for Joint Administration requesting that the Court jointly administer the LPHI Bankruptcy Case and the Subsidiary Bankruptcy Cases.

230.    On May 22, 2015, this Court granted the Subsidiary Debtors' request to jointly administer the LPHI Bankruptcy Case and the Subsidiary Bankruptcy Cases (collectively, these "Cases").

**B.    Life Partners' Pre-Petition Operations**

231.    On December 2, 2014, the district court for the Western District of Texas found, among other things, that ". . . [LPHI, Brian Pardo (CEO), and Scott Peden (General Counsel)] knowingly—or at least recklessly—violated securities laws of this nation."[10]   Immediately upon the Trustee's appointment, the Trustee began to discharge his fiduciary duties, including

---

[8] *See* LPHI Bankruptcy Case, Dkt. No. 261.

[9] *See* LPHI Bankruptcy Case, Dkt. No. 261.

[10] Final Judgment Order, *SEC v. Life Partners Holdings, Inc., et al.*, Case No. 12-cv-00033-JRN (W.D. Tex.) (the "SEC Action"), Dkt. No. 304.

**ORIGINAL COMPLAINT**                                                                                      **PAGE 49**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

launching an investigation into the business practices of Life Partners (which investigation is ongoing).[11]

232.    The Trustee's investigation has included an analysis of the Life Partners business enterprise and prior business practices, with a particular emphasis on investigating the allegations that resulted in the judgment entered in the SEC Action and led to his appointment.[12]

233.    As a result of his investigation to date, the Trustee concluded that Life Partners devised and executed a wide-ranging scheme to defraud its Investors.[13]

234.    As discussed in more detail below, Life Partners paid exorbitant commissions and fees to the Licensees, including the Defendant Licensees.  The Trustee did not become aware of the fraudulent nature of these transfers until after his appointment, when the Trustee's team began performing forensic accounting analyses.

235.    That fraud, which took place over the course of a number of years, occurred in a number of ways, including, but not limited to:

- Use of artificially shortened life expectancies in the sale of its so-called "fractional investments";

- Material misrepresentation of the returns Investors could expect;

- Material misrepresentations regarding whether policies had lapsed and resale of lapsed interests;

- Use of so-called escrow companies, as instrumentalities of, and cover for, the fraudulent scheme;

---

[11] LPHI Bankruptcy Case, Declaration of H. Thomas Moran II in Support of Voluntary Petitions, First Day Motions and Designation as Complex Chapter 11 Case (the "Moran Declaration"), Dkt. No. 347, at ¶ 40; *see also Trustee's Report Concerning His Investigation of the Debtors' Pre-Petition Business Conduct*, LPHI Bankruptcy Case, Dkt. No. 1584 (the "Report"), incorporated herein by reference.

[12] Moran Declaration, at ¶ 41.

[13] *Id.* at ¶ 42.

**ORIGINAL COMPLAINT**                                                                                      **PAGE 50**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

- Charging massive, undisclosed fees and commissions, the total amount of which, in many cases, exceeded the purchase price of the policies themselves;

- Repeated misrepresentation of Life Partners' business practices in order to maneuver around securities regulatory regimes;

- Egregious and continuous self-dealing by insiders;

- Failure to disclose cash surrender value of policies to Investors;

- Forcing Investors to abandon Contract Positions, many of which were then resold for personal gain, even when sufficient cash surrender value was present to pay premiums;

- Systematic financial mismanagement, including improper payment of dividends;

- Faulty and inconsistent record keeping, including with respect to the purported escrow companies;

- Commingling and unauthorized use of Investor monies;

- The offer and sale of unregistered securities; and

- Implying the investment structure was a permissible investment for an IRA, and failing to disclose the risks if it was not.[14]

236.    Plaintiffs bring this action to recover the substantial, undisclosed fees and commissions paid to the Defendant Licensees.

### a.    Life Partners' Policy Acquisition

237.    Life Partners was formed to engage in the secondary market for life insurance policies known generally as life settlements.  To build its portfolio of life insurance policies (the "Policy Portfolio"), LPI was generally contacted by owners of policies, or their representatives, to sell their policies.[15]  The policyholder provided LPI with certain information about the policy so that LPI could verify that the policy exists, confirm ownership of the policy, assess life

---

[14] *Id.* at ¶ 43.

[15] *Id.* at ¶ 21.

expectancy information, value and price the policy, and verify the policy could be transferred. LPI would then solicit money from Investors to fund LPI's purchase of the policy from the insured.[16]

238. Once the purchase was completed, LPI recorded its ownership of the policy with the insurance company and would then designate an escrow company as the record beneficiary.[17]

239. LPI purchased many types of life insurance policies, including group, term, universal life, and whole life.[18] As of the Subsidiary Petition Date, LPI is or was the record owner of approximately 3,400 life insurance policies (the "Policies") with an aggregate face value in excess of $2.4 billion.[19] Since the Trustee's appointment, Life Partners has not purchased any new life insurance policies.[20]

240. Following LPI's purchase of a life insurance policy and related sale of investment contracts to its Investors, LPI was responsible for policy servicing and portfolio management, including all of the activities required to keep the Policies in force through maturity. Those activities include, but are not limited to: (a) tracking the insured individuals; and (b) obtaining proof of death and ensuring that the escrow companies had sufficient information to submit claims for payment of death benefits under the Policies.[21] Historically, LPI has instructed escrow agents to pay premiums in amounts and frequency LPI directed.[22]

---

[16] *Id.*

[17] *Id.* at ¶ 22.

[18] *Id.* at ¶ 23.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

**ORIGINAL COMPLAINT** **PAGE 52**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

b.    *Life Partners' Investment Contract Structure*

241.    Life Partners solicited prospective Investors through its network of Licensees. These sales agents were not required to hold any state-issued license and received no special training to sell fractional interests related to the insurance policies purchased by Life Partners.

242.    The Texas Supreme Court has held that the agreements LPI used to solicit money from Investors are "investment contracts."[23]    These investment contracts recite that Investors have the right to receive a portion of the proceeds paid out on maturity of the policy.    The Life Partners investment contracts were not, however, registered as required by state securities law, and neither were many of the Licensees who sold them.

243.    Once an Investor purchased an investment contract relating to a particular policy, the percent of death benefit the Investor had contracted to receive was described as a "position" in the policy (a "Contract Position").    Investors typically invested in more than one Contract Position (*i.e.*, payouts under multiple policies).    The investment contracts further obligate Investors to "contribute additional amounts" to pay premiums on the policy until maturity in order to keep their investment in force if the insured should outlive the Cassidy-rendered LE.[24]

244.    Life Partners instructed the escrow company to divide the proceeds from the sale of a Contract Position of each investment (*i.e.,* per Contract Position bought) (the "Acquisition Cost") among the following:  (1) the seller of the policy and his/her agent, (2) LPI (for a fee), (3) the applicable Licensee(s) (and "master" Licensee) (for a commission), (4) ATLES or PES, the purported escrow companies (for a fee), and (5) ATLES or PES to meet the on-going premium burden (a so-called "premium escrow").

---

[23] *Life Partners, Inc. v. Arnold*, Nos. 14-0122 and 14-0226, 2015 WL 2148767, at *20 (Tex. May 8, 2015).

[24] Moran Declaration, at ¶ 30.

245. While Investors were aware that their investment dollars, combined with other Investors' money, were to be used for the policy purchase, to pay premiums, and to pay certain fees, Investors were not provided the specific information as to how their funds were distributed among these categories. Accordingly, the Investors were not aware that Licensees on average received approximately 12% of the total investment dollars.

### c. Life Partners' Use of LEs to Generate Fees

246. The lynchpin of Life Partners' ability to make money lay in the difference between the LE attributed to the policy when LPI purchased it from the seller or insured, and the LE that LPI obtained from its supposedly independent medical reviewer, Dr. Donald Cassidy, that Life Partners and the Licensees used in selling contract positions to Investors.

247. In a life settlement transaction, the estimate of an insured's life expectancy or LE is a critical factor in determining the purchase price of the life settlement. Generally, a longer LE attributable to a policy results in a lower purchase price, and a shorter LE (meaning the insured was likely to die in a shorter period of time) results in a higher price.

248. Life Partners evaluated and purchased life insurance policies accompanied by LEs prepared by companies well-respected in the life insurance industry. However, when selling the contract position to Investors, Life Partners utilized Cassidy's materially underestimated or shorter LEs (which were, on average, about half as long). This created a fraudulent spread between the lower prices at which Life Partners purchased the policies and the artificially higher price at which Life Partners sold the contract positions generated by Life Partners' use of the Cassidy LEs.

249. In other words, LPI was able to purchase policies for a lower amount when policies had longer life expectancies. Conversely, LPI could *sell* contract positions to its retail

**ORIGINAL COMPLAINT**                                                                                  **PAGE 54**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

Investors (through Licensees) for higher amounts when those policies had *shorter* LEs.  For example, LPI would purchase a policy with an industry standard third-party LE of 8 years and then may sell positions in the very same underlying policy to Investors based on a shorter Cassidy LE of 2-4 years.

250.    For most of Life Partners' sales, Investors were not aware that the policies had been purchased by Life Partners with an independent third-party LE.  For many years, Life Partners and its Licensees never disclosed the independent LE to Life Partners' Investors but only provided Investors with the shorter Cassidy LE.[25]

251.    The delta between the LEs enabled LPI to generate fees for the benefit of itself and its Licensees in excess of 30% of the total acquisition costs that Investors paid per policy —a fact that remained concealed from Investors.  Licensees knew, or should have known, the amounts they would receive in commissions, and that neither they nor Life Partners would disclose those fees.  Upon information and belief, many Licensees affirmatively concealed from Investors the source and/or amounts of their commissions.

252.    Many Investors were told by Licensees that the Investors would not have to pay Life Partners any amount after the initial investment costs were paid, and those who were told they might be required to pay premiums were often told it was very unlikely.  Yet because Life Partners and the Licensees misrepresented the real and likely life expectancies of the insureds, it was inevitable that Investors would actually need to pay premiums several years beyond the amount escrowed for that purpose.  The servicing of the policies themselves—through payment of premiums, checking on the health of the insured, making premiums calls, customer service, and other activities—required effort on the part of Life Partners well into the future.  But the

---

[25] At some point in or around 2011, LPI began listing two LEs on the materials it provided to Investors, along with an average of the two numbers.

**ORIGINAL COMPLAINT**                                                      **PAGE 55**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

Investors were told they would not be charged any additional amount by Life Partners for those services.

253.    Without those services, however, the policies would lapse and the Investors would lose their entire investment.  When insureds did outlive the Cassidy LEs, Life Partners called upon Investors to pay additional premiums.  When some Investors could not or would not pay their portion of the premiums, Life Partners would "advance" those amounts to keep the policies in force.  Thus, because Life Partners' revenue came entirely from fees generated upon the sale of new investments, Life Partners necessarily used new Investors' money to keep old Investors' policies afloat in order to avoid a collapse of the scheme and the Policy Portfolio.

254.    Life Partners' cash flow suffered based on the practice of advancing premiums and on the substantial sums of money diverted to Pardo, his family, and other accomplices, as well as the excessive fees and commissions paid to the Licensees.  Life Partners thereafter directed employees to force distressed Investors into abandonments when they could no longer pay premiums, and Pardo and his daughter and son-in-law (both executives of the company) set up a company, Paget Holdings, Ltd., which then acquired the abandoned interests and made a profit from their resale.  Life Partners also made fees in those resale transactions.  Finally, when even these tactics were insufficient to support the cash flow and inject funds into Life Partners' business, Pardo and Life Partners instituted an administrative "platform" fee (the "Platform Services Fee") in 2014, and charged all Investors for the continuing administration and servicing of the policies in which they had purchased an investment contract.

255.    Because of the need to fund ongoing servicing activities and premium advances, Life Partners was insolvent long before it filed for bankruptcy protection.  Like a Ponzi-scheme is necessarily insolvent from its inception, Life Partners in Ponzi fashion was always going to

require additional funds from Investors to keep the company afloat, because most of its revenue—derived entirely from Investor funds—was paid out in significant compensation, bonuses, dividends, and fees and commissions to the Licensees as the years went on, and an insufficient amount of capital was retained to fund the necessary ongoing business associated with the investments. Additionally, the servicing needs of the policies would continue long after the materially short Cassidy LEs had expired and the Investors' initial outlay of funds had been exhausted. Had the policies matured as projected by the Cassidy LEs, Life Partners would have far fewer policies in need of administration and servicing.

### d.    Life Partners' Extensive Network of "Licensees"

256.    As of the Petition Date, Life Partners had thousands of Licensees. This network of sales agents consisted of two categories—"Master Licensees" and "Referring Licensees" (who worked in association with a Master Licensee). [26]

257.    Life Partners entered into a Master Licensee Agreement for Life Settlements ("Master Licensee Agreement")[27] with each Master Licensee. Under each respective Master Licensee Agreement, a Master Licensee agreed to "refer its suitable clients . . . wishing to purchase life settlements to LPI" and "utilize LPI's business plan and transaction structure for life settlements."[28] A Master Licensee further agreed to "recruit additional Licensees who shall work under a Master Licensee to refer their suitable clients wishing to purchase life settlements to LPI."[29]

---

[26] Upon information and belief, Life Partners had a third category of sales agents with the designation of "Sub-Master Licensees." The term Master Licensee, as used herein, shall also include the sub-master licensees.

[27] An example of a Master Licensee Agreement is attached hereto as Exhibit B.

[28] Ex. B, Master Licensee Agreement at ¶ 1.

[29] Id. at ¶ 1; see also id. at ¶ 3(b).

**ORIGINAL COMPLAINT**                                                    **PAGE 57**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

258.    Once a Master Licensee recruited a Referring Licensee, Life Partners entered into a Licensee Agreement Under Master Licensee ("Licensee Agreement")[30] with each Referring Licensee.  Referring Licensees and Master Licensees entered into a "separate agreement setting forth the compensation which [Referring] Licensee is to receive for referrals of its clients under this Agreement."[31]

### e.    *Defendant Licensees Accepted Undisclosed & Exorbitant Fees and Commissions*

259.    Among the omissions of material information withheld from Investors uncovered by the Trustee's investigation, Life Partners and the Licensees failed to disclose the price LPI paid to purchase the policy vis a vis the magnitude of the fees and commissions paid to LPI and its Licensees, including the Defendant Licensees.

260.    In the life settlements industry, sales agents or brokers for sellers typically receive commissions of no more than 1-2% of the face value of the policy.  Texas regulations demand that investment advisers disclose anything over 3% as in excess of the industry norm.  FINRA has noted that life settlement transactions are securities transactions, and are subject to the securities laws and FINRA rules, which provide commissions must be fair and reasonable. Commissions over 5% of invested funds are not generally considered fair or reasonable by FINRA.

261.    Licensees, including the Defendant Licensees, received total commissions on the investments with Life Partners that greatly exceeded any industry standard commissions, and provided no value for their services.  In some egregious examples, Licensees received in excess of 15% of the invested funds.  In many cases, the commissions and fees paid to Licensees—

---

[30] An example of a Licensee Agreement is attached hereto as Exhibit C.

[31] *See* Ex. C, Licensee Agreement at 1.

**ORIGINAL COMPLAINT**                                                                  **PAGE 58**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

unbeknownst to the Investors—exceeded the purchase price of the policies themselves. In all cases, the fees far exceeded 1-2% of the face value of the policy, and the commissions were undisclosed.

262. The commission earned by a "Master Licensee" was determined by the applicable Master Licensee Agreement with Life Partners.[32] Upon information and belief, each respective Master Licensee Agreement provided that the total fee paid to the Master Licensee and all Referring Licensees would be a percentage of an Investor's acquisition cost.[33] Life Partners would distribute fees to a Master Licensee in accordance with the Master Licensee Agreement.[34]

263. Master Licensees in turn entered into commission arrangements with their Referring Licensees, whose commissions were a portion of the Master Licensee's fee.[35]

264. The Licensees, including the Defendant Licensees, all knew or should have known the percentage of commissions they would receive from each investment because those commissions were outlined in the pertinent contracts between them and Life Partners. Accordingly, each of the Defendant Licensees knew or should have known that the fees and commissions they received far exceeded industry standards and should have been disclosed under Texas law.

265. Despite their knowledge of the portion of each investment they would receive, the Licensees, including the Defendant Licensees, withheld information about their fees and commissions from Investors and many refused to provide truthful answers to Investors when questioned about the fees and commissions. A number of the Licensees misrepresented to

---

[32] Master Licensee Agreement at Schedule One (providing that the "total fee paid to Master Licensee and any referring Licensees under Master Licensee shall be 11% of the Acquisition Cost" as defined in the PFA).

[33] Ex. B, Master Licensee Agreement at Schedule One; *see also id.* at ¶ 3(e).

[34] Ex. B, Master Licensee Agreement ¶ 2(e).

[35] Ex. B, Master Licensee Agreement at Schedule One; Ex. C, Licensee Agreement at 1.

Investors that their fees were paid by Life Partners or by the policy's seller, and did not come out of Investor monies. In truth, Life Partners had no other significant source of income or revenue *outside* of Investor monies they kept as fees.

266. Upon information and belief, many of the Licensees, including many Defendant Licensees, were involved in the sale of other types of investments, including securities, and knew or should have known that a commission of more than 5% of invested funds would be excessive under the relevant statutes and regulations. Some Licensees requested or negotiated even higher commissions.

267. Between 2008 and 2015, the Defendant Licensees collectively received over $53.7 million in commissions and fees (the "Transfers"). Attached hereto as Exhibit A is a true and correct copy of the annual total commissions received by the Defendant Licensees from 2008 through February 2015. Plaintiffs incorporate by reference the information contained in Exhibit A as if fully set forth herein.

268. The Trustee and his team could not have been aware of the fraudulent nature of any of the transactions involving payments made to the Licensee Defendants until after the Trustee's appointment. Thus, the discovery rule and equitable tolling principles apply to any applicable limitations period. *See, e.g.*, *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998) (where the discovery rule shifts the date of the "legal injury" from the time the wrongful action occurred to the time when "[plaintiffs] knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action").

269. As an example of the egregiously disproportionate commissions to the Licensees, in 2008, one LPI Confidential Case History ("CCH")[36] used by LPI to solicit Investors described

---

[36] CCHs are similar to offering memorandum issued on a specific policy that only included limited disclosures.

**ORIGINAL COMPLAINT**                                                        **PAGE 60**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

the opportunity to purchase an investment contract relating to a policy with a face amount of $7,500,000.00.[37]  The CCH showed an acquisition cost of $4,500,000, with an escrow for future premium payments of $1,587,500.  The "Retail Closing Worksheet" maintained by LPI—and which was not disclosed to Investors—reflected that the amount LPI paid to the seller for the policy was actually only $700,000.[38]

270.    In that case, the undisclosed commissions that went to the Licensees were $540,000.  The fees to the purported escrow company (ATLES) were $7,280, and LPI received fees in the amount of $1,589,720.  Thus, while the purchase price of the policy was $700,000, LPI and its Licensees received over $2.1 million.  This disproportionate allocation of Investor funds to his or her investment compared to the fees and commissions received by LPI and the Licensees was not an isolated incident, but represents the widespread self-dealing of LPI and its Licensees in the sale of unregistered securities.

271.    For many sales, Investors were not provided the third-party LEs (only the Cassidy LE).  Further, Investors were unaware that LPI and its Licensees were often taking more than one-third of their investment in fees.

### f.    Life Partners and its Licensees Misrepresented the Meaning of LEs

272.    LPI and its Licensees also misrepresented the proper interpretation of an LE. When presenting the Cassidy LEs to Investors, Life Partners and its Licensees made representations that "life expectancy" meant that the insured was expected to live a certain number of years.  Typically, Cassidy would render an LE within a two-year range, most often 2-4 years or 3-5 years.

---

[37] *See* Exhibit I to Moran Declaration.

[38] *See* Exhibit J to Moran Declaration.

**ORIGINAL COMPLAINT**                                                                           **PAGE 61**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

273.    However, an actuarial LE is a mathematical calculation and is not intended to definitively communicate that the insured has a certain number of months or years to live.  As an example, an LE of eight years means that 50% of people will die by the eight-year mark, while the other 50% will die after that point in time, some as long as eight years after.  As a result of the misrepresentations made by Life Partners and the Licensees, many Investors believed that an insured had only 2-4 years to live based on the Cassidy LE, while an independent LE based on tens or hundred of thousands of viatical and/or life settlement underwritings actually indicated that 50% of people of the same gender, age, and smoking status, having the same impairments as the insured,  would live beyond 8 years.

274.    Further, because Certain Defendant Licensees' services to the company, in whatever form, were premised on maintenance and perpetuation of a fraudulent scheme, they did not contribute value in exchange for the monies received.

275.    For many years, LPI escrowed only enough Investor funds to cover premiums for the length of the (much shorter) Cassidy LEs.[39]  As a result, in the vast majority of cases, the up-front monies Life Partners collected to pay premiums over its projected "term" of the investment were insufficient, and premium calls were required because the funds were not enough to cover the ongoing premiums.

276.    Many Investors had to pay additional premiums when the insureds lived beyond the Cassidy LEs.  Many Investors would not have purchased the investments if they had been aware of the life expectancies of the insureds reflected in the non-Cassidy LEs (and what "life expectancy" actually means in the industry).

---

[39] Eventually, LPI began escrowing a flat three years of premiums in or around 2012, after numerous Investors complained of having to pay premiums when they believed the insureds were unlikely to live beyond the Cassidy LE, and after prolonged investigations by the Texas State Securities Board ("TSSB") and the Securities and Exchange Commission ("SEC") into allegations of fraud by LPI for using artificially short LEs to sell their investments to unsuspecting Investors.

**ORIGINAL COMPLAINT**                                                                                          **PAGE 62**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

277. In marketing materials prepared by Life Partners and utilized by the Licensees to solicit Investors, Life Partners and the Licensees represented that an insignificant number of policies had exceeded their LEs.

### g. *Additional Wrongful Conduct of the Defendant Licensees*

278. Licensees failed to provide accurate information regarding the life settlements to Investors, and advised and solicited Investors to invest through material misrepresentations and omissions regarding the investment contracts. The Licensees further failed to disclose that a disproportionate sum of the investment would be used to pay Life Partners and themselves.

279. Marketing materials used by Licensees in selling Life Partners life settlements contained material misrepresentations and omissions, which Licensees knew or should have known. Misrepresentations by Licensees in marketing materials were so blatantly false that in March 2011, Life Partners prepared correspondence to Licensees outlining issues with "[s]ome of the more common misrepresentations" made by Licensees.

280. For example, Licensees regularly advertised that Investors could expect double-digit returns on their investments, even though it was well-known among the Licensees that many policies were not paying out returns anywhere close to the advertised expectation.

281. Licensees also repeatedly gave Investors false assurances as to the safety of the life settlements, as well as false assurances of expected or anticipated returns on investments. For example, marketing material used by Licensees conveyed that "gross profits are readily known" from the beginning of the investment, promising "sum certain returns."

282. The Licensees also specifically provided Investors with materially misleading marketing materials touting an "average" return on investment without clearly acknowledging the fact that those "average" returns did not include the vast majority of life settlement

investments that had actually *exceeded* the life expectancy that Life Partners (through the Licensees) had provided to the Investors.  Thus, the average return on investment was misleading and significantly inflated.

283.   Upon information and belief, at least some of the Licensees were aware that Life Partners had other life expectancy estimates in its possession which were not provided to retail Investors.

284.   The Licensees routinely and erroneously advertised that "life expectancy" meant the time within which an individual was expected to die.  Upon information and belief, after Investors began complaining of policies exceeding the Cassidy LEs, Life Partners and the Licensees attempted to shift the focus from LEs to "the discount" or potential return on investment—even though Life Partners and the Licensees knew or should have known that LEs are the key components of the fair market value of investments in life settlements contracts and directly affected an Investors' interest and return.

285.   The Licensees knew or should have known that many policies had gone beyond the Cassidy LEs provided by Life Partners to its Investors, but many continued to advertise that new Investors could trust the accuracy of the Cassidy LEs.  The following representations and omissions regarding the accuracy of Cassidy's LEs were made by Licensees in the marketing of Life Partners' investment contracts:

- "Less than 2% of all policies have gone long over the 15 year history of Life partners."

- "The average length of time for policies that have gone long is 7 months"

- "Approximately 70-75% [of policies] mature on time or early."

These misrepresentations were not isolated incidents, but represent only a few of the misrepresentations made by Licensees, including the Defendant Licensees, to sell the Life Partners life settlements and line their pockets with commissions.

286.   Further, upon information and belief, the Licensees, including the Defendant Licensees, received complaints from Investors that their investment had exceeded the Cassidy LEs.  Despite their knowledge that many policies had exceeded the Cassidy LEs, the Licensees continued marketing the Life Partners life settlements as "safe" and "risk-free" investments.

287.   Many of the Licensees, including the Defendant Licensees, represented that no one had ever lost money on Life Partners' investments.  The Licensees, including the Defendant Licensees, knew or should have known that such representations were false as many Licensees received complaints from Investors regarding the status of their investments and abandonments of interests in policies.

288.   The Licensees, including the Defendant Licensees, also touted the purported safety of a life settlement as an investment, without addressing the risk that an Investor would have to pay premiums after the escrowed premium funds had been exhausted.

289.   The Licensees routinely represented that Investors should not expect to have to pay premiums beyond the amounts escrowed in the initial acquisition costs.  However, Licensees, including the Defendant Licensees, received information from Life Partners regarding premium calls for their Investors.  Further, upon information and belief, the Licensees knew or should have known that a number of Investors lost their investment funds when their interests were abandoned for failure to pay premium calls.

290.   Many of the Licensees represented that Life Partners and its agents were paid by the insurance policy sellers, not by the Investors themselves.  The Licensees, including the

**ORIGINAL COMPLAINT**                                                                                                    **PAGE 65**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

Defendant Licensees, knew or should have known that such representations were false because retail closing worksheets specifically set forth the allocation of Investor funds that would be distributed to both Life Partners and the Licensees.

291.   Licensees had each Investor sign an Agency Agreement, in which each Investor indicated that they were an "accredited investor" with a net worth of at least one million dollars. Upon information and belief, Life Partners and many of the Licensees, including the Defendant Licensees, knew or should have known that many of the Investors they solicited were *not* accredited Investors or high net worth individuals who could afford to lose the money being invested.

292.   Upon information and belief, the Licensees, including the Defendant Licensees, knew or should have known that life settlements were potentially problematic investments for IRAs.  Yet, the Licensees, including the Defendant Licensees, willfully ignored the IRS's stance on IRAs investing in life insurance and continued to market life settlements as good investments through IRAs.

293.   Upon information and belief, the Licensees, including the Defendant Licensees, also willfully ignored significant signs that the Life Partners structure was fraudulent, including: (1) Life Partners' refusals to arrange meetings between Licensees and Cassidy; (2) Life Partners' marketing strategy of deemphasizing the importance of LEs, despite the importance of LEs to Investors and in determining a policy's market value; (3) Life Partners' refusal to provide internal and historical statistics on the number of policies that exceeded Cassidy's LEs; (4) Life Partners' refusal to provide detailed information or statistics on matured investments; and (5) the resignation of Life Partners' auditor.  The Licensees ignored Life Partners' actions and

**ORIGINAL COMPLAINT**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

withholding of material information and focused solely on enriching themselves with the excessive fees and commissions.

294. Licensees encouraged Investors to "take the first available policy" without obtaining any information regarding the insured or reviewing the policy's CCH.

295. Upon information and belief, several of the Licensees vacationed and socialized with the Life Partners principals, including Brian Pardo, travelling on Pardo's private jet and yacht, using fees from Investor monies to fund the excursions.

296. The Defendant Licensees made grossly excessive commissions on the investments they marketed and helped Life Partners sell to Investors. Investors had no knowledge that Life Partners and its Licensees would pocket over 30% of their monies at the outset, and were misled about the life expectancies related to the policies they invested in. The Investors were likewise deceived with misleading marketing materials and assurances about the success of the investments by Life Partners and the Licensees.

## V.   CLAIMS

**COUNT 1:   Actual Fraudulent Transfer –TEX. BUS. & COMM. CODE § 24.005(a)(1) through 11 U.S.C. §§ 544, 550, 551 (Against All Defendant Licensees)**

297. Plaintiffs incorporates the preceding paragraphs as if set forth fully herein.

298. Plaintiffs seek to avoid transfers made to the Defendant Licensees in the form of excessive fees and commissions (as described above) that Life Partners' unsecured creditors could avoid under applicable state law pursuant to, *inter alia*, Section 544(b)(1) of the Bankruptcy Code. *See* 11 U.S.C. § 544(b)(1).

299. Life Partners' creditors, or the Investors, could have brought the state law fraudulent transfer claims now asserted by Plaintiffs.

**ORIGINAL COMPLAINT                                                                                     PAGE 67
AGAINST CERTAIN LIFE PARTNERS LICENSEES**

300. The transfers were made with the actual intent to hinder, delay, or defraud the Investors and other creditors of Life Partners, demonstrated by, among other things, that:

   a. The transfers consisted of undisclosed fees generated by misleading Investors about the life expectancies associated with Life Partners' investment contracts and the performance of those investments;

   b. Life Partners and its Licensees, including the Defendant Licensees, concealed facts that would have alerted Investors and other creditors that the profits from its business derived from misleading Investors;

   c. The transfers occurred after Life Partners was insolvent;

   d. A number of the transfers occurred both before and after substantial debts were incurred as a part of significant litigation; and

   e. The consideration received by Life Partners for the transfers to the Defendant Licensees was not reasonably equivalent in value.

301. As alleged above, Life Partners made or authorized transfers totaling at least $53.7 million to the Defendant Licensees during the period from 2008 to 2015 detailed in Exhibit A. These Transfers could have been avoided by Investors and other creditors under Texas state fraudulent transfer law. TEX. BUS. & COM. CODE § 24.005(a)(1).

302. These Transfers and the excessive nature of the commissions paid to Licensees, including the Defendant Licensees, were concealed from Investors. The Transfers could not have been reasonably discovered by the Investors until the Trustee's investigation revealed the excessive commissions and fees that were paid. Plaintiffs bring this action within one year after the Transfers were or reasonably could have been discovered.

**ORIGINAL COMPLAINT**                                               **PAGE 68**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

303.   The claims of the creditors of Life Partners, including the Investors, arose before or within a reasonable time after the transfers to the Defendant Licensees.

304.   Moreover, Life Partners was insolvent or became insolvent shortly after the Transfers to the Defendant Licensees were made.  Specifically, due to the fraudulent scheme of the materially understated LEs described above, Life Partners was insolvent from the beginning of that scheme.  By utilizing materially misstated LEs, Life Partners generated an artificial difference between the price it paid to purchase life settlements and the price at which it sold life settlements to Investors.  With this generation of significant "profits" through the misstated LEs, Life Partners was able to divert funds to its own "profit" pool and the Licensees (including the Defendant Licensees).  The continuing business would require funds for servicing and premium advances when insureds exceeded the Cassidy LEs which would be derived from new Investors.  In other words, the misstated or fraudulent LEs propped up the business of Life Partners, and Life Partners was insolvent from the commencement of the use of the Cassidy LEs.

305.   Further, Life Partners did not receive consideration that was reasonably equivalent to the amount of Transfers to the Defendant Licensees.  In the life settlement industry, commissions paid to sales agents are generally no more than 1-2% of the face value of the policy.  Further, Texas regulations demand that investment advisers disclose anything over 3% as in excess over the industry norm, and commissions over 5% are not generally considered fair or reasonable by FINRA.

306.   Further, because the Defendant Licensees' services to the company, in whatever form, were premised on maintenance and perpetuation of a fraudulent scheme, they did not contribute value in exchange for the monies received.

**ORIGINAL COMPLAINT**                                                                                  **PAGE 69**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

307.   At the time the Transfers were made, actual creditors of the Debtors holding unsecured claims allowable within the meaning of 11 U.S.C. §§ 502 and 544(b) existed.

308.   The Transfers to each of the individual Defendant Licensees that Plaintiffs seek to avoid are set forth in detail in Exhibit A attached hereto and incorporated by reference.

309.   As a result of these Transfers to the Defendant Licensees, the Life Partners bankruptcy estate was damaged.

310.   Therefore, Life Partners' creditors have the right to avoid the transfers to the Defendant Licensees under Section 24.005(a)(1) of the Texas Business and Commerce Code, and Plaintiffs can seek to enforce that right under Section 544 of the Bankruptcy Code.  Plaintiffs should recover all Transfers to the Defendant Licensees from 2008 to present in the amount of no less than $53.7 million.

**COUNT 2:   Constructive Fraudulent Transfer –TEX. BUS. & COMM. CODE § 24.005(a)(2) through 11 U.S.C. §§ 544, 550, 551 (Against Certain Defendant Licensees per Exhibit A)**

311.   Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

312.   Life Partners made or authorized transfers (as described above) totaling at least $15.6 million to Certain Defendant Licensees set forth in Exhibit A during the four years preceding the LPHI Petition Date without receiving reasonably equivalent value in exchange for the transfer.  These transfers to the Certain Defendant Licensees were fraudulent as to the Investors.

313.   Life Partners did not receive reasonably equivalent value in exchange for these transfers, and the Investors or other creditors could avoid them under Texas state fraudulent transfer law.  TEX. BUS. & COMM. CODE § 24.005(a)(2).

314.   The Debtors had an interest in the property transferred to Certain Defendant Licensees.

**ORIGINAL COMPLAINT                                                                              PAGE 70**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

315. In the life settlement industry, commissions paid to sellers' agents are generally no more than 1-2% of the face value of the policy. Further, Texas regulations demand that investment advisers disclose anything over 3% as in excess over the industry norm, and commissions over 5% are not generally considered fair or reasonable by FINRA.

316. Further, because Certain Defendant Licensees' services to the company, in whatever form, were premised on maintenance and perpetuation of a fraudulent scheme, they did not contribute value in exchange for the monies received.

317. At the time of the transfers, Life Partners was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to its business.

318. At the time of the transfers, Life Partners intended to incur, or believed that it would incur, debts beyond its ability to pay as they became due.

319. Specifically, due to the fraudulent scheme of the materially understated LEs described above, Life Partners was insolvent from the beginning of that scheme. By utilizing materially misstated LEs, Life Partners generated an artificial difference between the price it paid to purchase life settlements and the price at which it sold life settlements to Investors. With this generation of significant "profits" through the misstated LEs, Life Partners was able to divert funds to its own "profit" pool and the Licensees, including Certain Defendant Licensees. The continuing business would require funds for servicing and premium advances when insureds exceeded the Cassidy LEs which would be derived from new Investors. In other words, the misstated or fraudulent LEs propped up the business of Life Partners and Life Partners was insolvent from the commencement of the use of the Cassidy LEs.

320.    The Transfers to each of the individual Certain Defendant Licensees that Plaintiffs seek to avoid are set forth in detail in Exhibit A attached hereto and incorporated by reference.

321.    As a result of these Transfers to Certain Defendant Licensees, the bankruptcy estate was damaged.

322.    At the time the Transfers were made, actual creditors of the Debtors holding unsecured claims allowable within the meaning of 11 U.S.C. §§ 502 and 544(b) existed.

323.    Therefore, Plaintiffs should recover Transfers to Certain Defendant Licensees from 2011 to February 2015 in an amount of no less than $15.6 million.

**COUNT 3:    Actual Fraudulent Transfer – 11 U.S.C. §§ 548(a)(1)(A) , 550, 551 (Against Certain Defendant Licensees per Exhibit A)**

324.    Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

325.    Plaintiffs seek to avoid Transfers made to Certain Defendant Licensees set forth in Exhibit A (as described above) pursuant, *inter alia*, to Section 548 of the Bankruptcy Code, which Transfers were made with actual intent to hinder, delay, or defraud the Investors and other creditors of the Debtors, demonstrated by, among other things, that:

    a.    The Transfers consisted of undisclosed fees generated by misleading Investors about the life expectancies associated with Life Partners' investment contracts and the performance of those investments;

    b.    Life Partners and the Licensees, including Certain Defendant Licensees, concealed facts that would have alerted Investors and other creditors that the profits from its business derived from misleading Investors;

    c.    The Transfers occurred after Life Partners was insolvent;

**ORIGINAL COMPLAINT**                                                                                   **PAGE 72**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

     d.     A number of the Transfers occurred both before and after substantial debts were incurred as a part of significant litigation; and

     e.     The consideration received by Life Partners for the Transfers to Certain Defendant Licensees was not reasonably equivalent in value.

326.    LPHI and/or LPI made or authorized transfers to Certain Defendant Licensees during the two years preceding the LPHI Petition Date and Subsidiary Debtor Petition Date.

327.    The Debtors had an interest in the property transferred to Certain Defendant Licensees.

328.    As a result of these Transfers to Certain Defendant Licensees, the bankruptcy estate was damaged.

329.    In the life settlement industry, commissions paid to sellers' agents are generally no more than 1-2% of the face value of the policy.  Further, Texas regulations demand that investment advisers disclose anything over 3% as in excess over the industry norm, and commissions over 5% are not generally considered fair or reasonable by FINRA.  Certain Defendant Licensees received a significantly greater percentage of each investment made in the Life Partners life settlements.

330.    Therefore, the Transfers to Certain Defendant Licensees and described herein should be avoided under, *inter alia*, Section 548 of the Bankruptcy Code.

**COUNT 4:**    **Constructive Fraudulent Transfer – 11 U.S.C. §§ 548(a)(1)(B), 550, 551 (Against Certain Defendant Licensees per Exhibit A)**

331.    Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

332.    LPHI and/or LPI made or authorized Transfers (as described above) to Certain Defendant Licensees set forth in Exhibit A during the two years preceding the respective LPHI Petition Date and Subsidiary Debtor Petition Date.

333.   The Debtors had an interest in the property transferred to Certain Defendant Licensees.

334.   As a result of these transfers to Certain Defendant Licensees, the bankruptcy estate was damaged.

335.   In the life settlement industry, commissions paid to sellers' agents are generally no more than 1-2% of the face value of the policy.  Further, Texas regulations demand that investment advisers disclose anything over 3% as in excess over the industry norm, and commissions over 5% are not generally considered fair or reasonable by FINRA.  Certain Defendant Licensees received a significantly greater percentage of each investment made in the Life Partners life settlements.

336.   Life Partners did not receive consideration that was reasonably equivalent to the amount of property transferred to Certain Defendant Licensees.  Further, because their services to the company, in whatever form, were premised on maintenance and perpetuation of a fraudulent scheme, the Certain Defendant Licensees did not contribute value in exchange for the monies they received.

337.   At the time of the Transfers, Life Partners was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to its business.

338.   At the time of the Transfers, Life Partners intended to incur, or believed that it would incur, debts beyond its ability to pay as they became due.

339.   Life Partners was also insolvent at the time of the transfers, or became insolvent due to the transfers.  Specifically, due to the fraudulent scheme of the materially understated LEs described above, Life Partners was insolvent from the beginning of that scheme.  By utilizing

**ORIGINAL COMPLAINT**                                                                 **PAGE 74**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

materially misstated LEs, Life Partners generated an artificial difference between the price it paid to purchase life settlements and the price at which it sold life settlements to Investors. With this generation of significant "profits" through the misstated LEs, Life Partners was able to divert funds to its own "profit" pool and Licensees (including the Defendant Licensees). The continuing business would require funds for servicing and premium advances when insureds exceeded the Cassidy LEs which would be derived from new Investors. In other words, the misstated or fraudulent LEs propped up the business of Life Partners and Life Partners was insolvent from the commencement of the use of the Cassidy LEs.

340. Therefore, the Transfers to Certain Defendant Licensees should be avoided under, *inter alia*, Section 548 of the Bankruptcy Code.

**COUNT 5:   Claim for Contribution  – TEX. CIV. PRAC. & REM. CODE § 33.001 *et seq.*
(Against All Defendant Licensees)**

341. Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

342. Plaintiffs seek contribution, on behalf of Life Partners, from the Defendant Licensees for their participation in and facilitation in the scheme to defraud Investors. Each of the Defendant Licensees aided and abetted Life Partners and were joint tortfeasors with Life Partners in defrauding the Investors.

343. As set forth above, Life Partners engaged in a scheme to defraud its Investors in violation of state common law and state and federal securities laws. The Defendant Licensees knew or should have known of the fraudulent scheme and intended to and did provide Life Partners with assistance in perpetrating the fraud. The Defendant Licensees' involvement in Life Partners' life settlement transactions was a substantial factor in causing the fraud on the Investors.

344. Specifically, Life Partners and the Defendant Licensees made material misrepresentations and omissions of fact to the Investors regarding the life settlements. The misrepresentations and omissions of fact made by Life Partners and the Defendant Licensees include, but are not limited to, the following: (1) the use of Cassidy's materially underestimated LEs to sell life settlements to Investors; (2) the withholding or omission of LEs prepared by companies well-respected in the life insurance industry and utilized by Life Partners in evaluating and purchasing life insurance policies accompanied by LEs; (3) the disproportionate percentage of an investment that were paid to Life Partners and Licensees (including the Defendant Licensees) and undisclosed to Investors; (4) material misrepresentations to Investors regarding the extent of financial contributions necessary to maintain premium payments; and (5) material misrepresentations made in marketing materials prepared by Life Partners and utilized by Licensees (including the Defendant Licensees) regarding life settlements. Upon information and belief, (1) the Defendant Licensees made the misrepresentations and omissions with knowledge of their falsity or with reckless disregard to the truth; (2) the Defendant Licensees made the misrepresentations and omissions with the intent that Investors rely on such representations regarding the life settlement transactions; and (3) Investors relied on the misrepresentations and omissions of the Defendant Licensees in making the decision to invest in Life Partners' life settlements.

345. Further, the Defendant Licensees also participated in or perpetrated the fraudulent scheme of Life Partners by selling or marketing unregistered securities in violation of Texas Securities laws.

346. Therefore, Plaintiffs assert a right of contribution from the Defendant Licensees. TEX. CIV. PRAC. & REM. CODE § 33.001 *et seq.*

**ORIGINAL COMPLAINT**                                                                                          **PAGE 76**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

**COUNT 6:    Preferences – 11 U.S.C. §§ 547, 550, 551 (Against Certain Defendant Licensees per Exhibit A)**

347.    Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

348.    Plaintiffs seek to avoid the Transfers described above, including, but not limited to, "fees," "bonuses," and "commissions" made, directly or indirectly, to Certain Defendant Licensees under 11 U.S.C. § 547(b), set forth in Exhibit A.

349.    Plaintiffs seek to avoid the Transfers made, directly or indirectly, to Certain Defendant Licensees by (i) LPI within the 90-day period prior to the LPI Petition Date; and (ii) LPHI within the 90-day period prior to the LPHI Petition Date.

350.    The transfers to each of the individual Certain Defendant Licensees that Plaintiffs seek to avoid by preference for the 90-day period prior to the Petition Date are set forth in detail in Exhibit A attached hereto and incorporated by reference.

351.    The Debtors had an interest in these Transfers at the time the Transfers were made.

352.    Such compensation was paid for or on account of an antecedent debt owed by the Debtors before the transfer was made.

353.    Such compensation was transferred to and for the benefit of Certain Defendant Licensees, who were creditors of the Debtors.

354.    The Transfers were made on or within 90 days before the relevant Petition Date.

355.    At the time these Transfers were made, Life Partners was insolvent.  Specifically, due to the fraudulent scheme of the materially understated LEs described above, Life Partners was insolvent from the beginning of the scheme.  By utilizing materially misstated LEs, Life Partners generated an artificial difference between the price it paid to purchase life settlements and the price at which it sold life settlements to Investors.  With this generation of significant

**ORIGINAL COMPLAINT                                                                                      PAGE 77
AGAINST CERTAIN LIFE PARTNERS LICENSEES**

"profits" through the misstated LEs, Life Partners was able to divert funds to Pardo and to its own "profit" pool—and to Certain Defendant Licensees through the exorbitant commissions. In other words, the misstated or fraudulent LEs propped up the business of Life Partners and Life Partners was insolvent from the commencement of the use of the Cassidy LEs. The institution of the Platform Services Fee in 2014 also evidences the insolvency of Life Partners. Further, the Debtors are presumed to have been insolvent on and during the 90 days immediately preceding the petition dates for these Cases. 11 U.S.C. § 547(f).

356.    These Transfers enabled Certain Defendant Licensees to receive more money than they would have received under Chapter 7 of the Bankruptcy Code, if these amounts had not been paid, and if Certain Defendant Licensees had been paid as provided in the Bankruptcy Code.

357.    Therefore, the Transfers to Certain Defendant Licensees should be avoided under, *inter alia*, Section 547 of the Bankruptcy Code.

**COUNT 7:    Recovery of Avoided Transfers – 11 U.S.C. § 550 (Against All Defendant Licensees)**

358.    Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

359.    Each of the Defendant Licensees was the initial transferee of the Transfers alleged above or the immediate or mediate transferee of the initial transferee of the Transfers alleged above.

360.    The value of the Transfers alleged above, to the extent they are avoided pursuant to 11 U.S.C. §§ 544, 547 and/or 548, may be recovered by Plaintiffs pursuant to 11 U.S.C. § 550.

**COUNT 8:    Breach of Licensee Agreement (Against All Defendant Licensees)**

361.    Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

362.    The Defendant Licensees are each a party to a Licensee Agreement with LPI.

**ORIGINAL COMPLAINT**                                                    **PAGE 78**
**AGAINST CERTAIN LIFE PARTNERS LICENSEES**

363.    Under their respective Licensee Agreements, the Defendant Licensees each promised and agreed to "be honest and truthful in all dealings with its clients, Licensees, and their clients regarding life settlements" and to "not misrepresent the qualities or attributes of life settlements." Ex. C, Licensee Agreement ¶ 3(a).  Each Defendant Licensee also agreed and promised to "only solicit and refer its clients to [LPI] who meet the financial and other suitability standards to purchase life settlements"—in other words, those who qualified as accredited Investors.  Ex. C, Licensee Agreement ¶ 3(b).

364.    Each Defendant Licensee warranted that he was "duly licensed and qualified in each state in which it is required to be so licensed" and agreed that it would be "responsible for complying with all federal, state, and local laws, rules and regulations." Ex. C, Licensee Agreement ¶ 3(c).

365.    Each of the Defendant Licensees further agreed to indemnify and hold LPI harmless for "any and all damages, attorney's fees and other claims based, in whole or in part, on [its or his] failure to comply with the obligations" in their respective Licensee Agreements and for "any misrepresentations or omissions . . . concerning the purchase of life insurance policy interests by" Investors.  Ex. C, Licensee Agreement ¶ 10.

366.    As set forth in detail herein, the Defendant Licensees failed to deal honestly and fairly with Investors by, among other things, (i) misleading Investors regarding the safety of life settlement contracts; (ii) failing to disclose the exorbitant fees and commissions retained by LPI and Licensees; (iii) failing to offer LPI life settlements to suitable and accredited Investors only; and (iv) failing to comply with all applicable laws, rules and regulations concerning their sale of LPI life settlements.

367.    As a result of these breaches, the Defendant Licensees have injured the Life Partners bankruptcy estate by proximately causing claims for damages that defrauded Investors have against the bankruptcy estate.  Accordingly, Plaintiffs assert a claim for indemnification to the extent that the actions of the Defendant Licensees damaged the bankruptcy estate in the amount of the total allowable claims defrauded Investors have against the bankruptcy estate or, in the alternative, in the amount of the total fees and commissions received by each of the Defendant Licensees.

**COUNT 9:    Disallowance of Defendants' Claims – 11 U.S.C. § 502(d) (Against All Defendant Licensees)**

368.    Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

369.    To the extent that each of the Defendant Licensees' claims are voidable under section 544, 547, or 548 of the Bankruptcy Code, such claims against the Debtors should be disallowed in whole or in part pursuant to Section 502(d) of the Bankruptcy Code.

**COUNT 10:   Equitable Subordination – 11 U.S.C. § 510(c) (Against All Defendant Licensees)**

370.    Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

371.    As described throughout this Complaint, the Defendant Licensees engaged in inequitable conduct by assisting in the perpetuation of a wide-ranging fraud.  Their actions (and inaction) resulted in the transfer of substantial value to themselves, Pardo, and the Executives to the direct detriment of Life Partners, the defrauded Investors, and other stakeholders of this bankruptcy estate.

372.    Thus, allowing any Defendant Licensees to receive payment on their claims, if they assert any, prior to (or equal with) other creditors of the bankruptcy estate would be unfair and inequitable.

373.    Therefore, the Defendant Licensees' claims should be equitably subordinated to the claims of all other stakeholders in this bankruptcy estate pursuant to section 510(c) of the Bankruptcy Code.

## VI.    CONSTRUCTIVE TRUST

374.    Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

375.    The Defendant Licensees were unjustly enriched by the commissions and fees that they received, based on principles of justice, equity, and good conscience.  The transfers caused the Defendant Licensees to receive money that belonged to the bankruptcy estate for not reasonably equivalent exchange.  It would be fundamentally unfair to allow the Defendant Licensees to retain funds truly belonging to the bankruptcy estate while the defrauded Investors seek to recover little of their original investments unless assets exist to make them and other creditors whole.

376.    The funds used for payment to the Defendant Licensees and, in some instances, for their purchase, as Investors, in certain life settlements with Life Partners, are directly traceable to funds of the defrauded Investors in the fraudulent scheme.  As such, they constitute assets of the bankruptcy estate and are impressed with a constructive trust and should be disgorged and paid to the Trustee to enable the bankruptcy estate to satisfy its obligations to its Creditors.  Further, the Court should prevent any distributions or funds whatsoever to be paid to the Defendant Licensees from the bankruptcy estate or from maturities paid out on policies which are a part of the Life Partners portfolio until such time as this lawsuit is finally resolved and any claims against them are satisfied or released.

## VII. ATTORNEYS' FEES

377. Plaintiffs are entitled to recover their reasonable and necessary attorneys' fees and costs for their claims against Defendant Licensees.

378. Specifically, under applicable fraudulent transfer law, Plaintiffs are entitled to attorneys' fees and costs for their claims against Defendant Licensees. *See* TEX. BUS. & COMM. CODE § 24.013.

## VIII. CONCLUSION

WHEREFORE, Plaintiffs request that the Defendant Licensees be ordered to return the funds they received from Life Partners to the Debtor's Estate, and that judgment be entered against them and in favor of Plaintiffs for the total amounts transferred to them. Further, Plaintiffs requests that they be awarded attorneys' fees and costs, and granted any other relief, both special and general, to which they may be justly entitled.

DATED: March 11, 2016.

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By:     */s/ David M. Bennett*

David M. Bennett
Texas Bar No. 02139600

Richard B. Roper
Texas Bar No. 17233700

Katharine Battaia Clark
Texas Bar No. 24046712

Jennifer R. Ecklund
Texas Bar No. 24045626

1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:  214/969-1700
Facsimile: 214/969-1751
David.Bennett@tklaw.com
Richard.Roper@tklaw.com
Katharine.Clark@tklaw.com
Jennifer.Ecklund@tklaw.com

**ATTORNEYS FOR PLAINTIFFS**